CONTINENTAL BANK & TRUST COMPANY, Respondent,
v. AKWA and wife, Appellants.

*No. 316. Argued March 28, 1973.—Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 174.)

---

[13] *Zimmermann v. Thompson* (1962), 16 Wis. 2d 74, 76, 114 N. W. 2d 116. *See also: Moritz v. Broadfoot* (1967), 35 Wis. 2d 343, 346, 151 N. W. 2d 142.

382

For the appellants there were briefs by *Gimbel, Gimbel & Boyle,* attorneys, and *Robert K. Steuer* of counsel, all of Milwaukee, and oral argument by *Mr. Steuer.*

For the respondent there was a brief and oral argument by *Stanley F. Hack* of Milwaukee.

CONNOR T. HANSEN, J. The dispositive issue in this case is whether the allegations of plaintiff's second amended complaint state a cause of action. To state a cause of action it must appear that there is a right in the plaintiff and a violation of this right by the defendant.[4]

When challenged by demurrer, pleadings are to be liberally construed with a view to substantial justice to the parties and are entitled to all reasonable inferences in favor of the pleadings which can be drawn from the facts pleaded. *Padilla v. Bydalek* (1973), 56 Wis. 2d 772, 203 N. W. 2d 15; *Jennaro v. Jennaro* (1971), 52 Wis. 2d 405, 190 N. W. 2d 164; *Walley v. Patake* (1956), 271 Wis. 530, 74 N. W. 2d 130. Where this court reviews an order overruling a demurrer made on the ground that the complaint did not state a cause of action, it gives the complaint a liberal construction in favor of stating a cause of action. *Libowitz v. Lake Nursing Home, Inc.* (1967), 35 Wis. 2d 74, 150 N. W. 2d 439, 151 N. W. 2d 680.[5]

The complaint alleges the existence of and elements essential to the contract of guaranty; the validity and terms of the underlying obligation that corresponds to the guaranty; and the performance of the conditions precedent to the right of action on the contract of guaranty, including a demand for payment from the debtor with the subsequent nonperformance and resulting deficiency thereby, and a demand on the defendants, as guarantors, to perform the contract of guaranty and the nonperformance of the guaranty by

---

[4] *Zander v. Columbus Foods Corp.* (1946), 249 Wis. 268, 271, 24 N. W. 2d 624; *Franke v. H. P. Nelson Co.* (1914), 157 Wis. 241, 147 N. W. 13.

[5] For a full discussion upon the liberality afforded pleadings when challenged by demurrer, *see: Weinstein v. McCabe* (1969), 43 Wis. 2d 76, 168 N. W. 2d 210.

the defendants. We are of the opinion that the complaint sets forth facts sufficient to state a good cause of action on a contract of guaranty. *First Nat. Bank v. Schellenberg* (1910), 143 Wis. 647, 128 N. W. 279.

Defendants argue, however, that the complaint alleges facts that create or concede affirmative defenses that are fatal to its validity. This court in *Thomas v. Kells* (1971), 53 Wis. 2d 141, 145, 191 N. W. 2d 872, said:

". . . While a complaint need not specifically deny the existence of any and all affirmative defense, it can, by inadvertence or otherwise, create or concede an affirmative defense fatal to its validity. . . ."

Defendants contend that the following affirmative defenses are demonstrated in the plaintiff's complaint and are fatal to its cause of action as a matter of law: (1) The plaintiff is not the holder of the notes evidencing the Akwa-Downey indebtedness and cannot, therefore, proceed against the defendants to collect thereon; (2) the settlement agreement constitutes satisfaction and payment in full, discharging the underlying obligation and the liability of the defendants, as guarantors; and (3) the settlement agreement releases Akwa-Downey from further liability upon the notes and, therefore, it must discharge the defendants as to liability thereon.

*Plaintiff as holder of the notes.*

Defendants rely upon ch. 3 of the Uniform Commercial Code which has been adopted in this state [6] and argue that the execution of the notes suspends any

[6] Ch. 403, Stats., **Commercial Paper**, adopted in Wisconsin by Laws of 1963, ch. 158.

underlying obligation of the principal (Akwa-Downey) ; [7] that the factual predicate to recovery upon the notes is production of the instruments; [8] that the cancellation of the notes discharges the guarantor; [9] that acquisition of the notes by the Downeys, as coguarantors, discharges defendants' liability thereon; [10] and that the above acts, concerning the transfer and cancellation of the notes effectively destroys any recourse the defendants would have against Akwa-Downey if they were compelled to pay plaintiff upon the notes. Defendants conclude that the transfer and cancellation of the notes effectively destroys, as a matter of law, any action on the instruments against the defendants by the plaintiffs.

---

[7] Sec. 403.802 (1), Stats., in part provides:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation:

"(a) The obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and if there is no recourse on the instrument against the underlying obligor; and

"(b) In any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation."

[8] Sec. 403.307 (2), Stats., provides:

"(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

[9] Sec. 403.605, Stats., in part, provides:

"(1) The holder of an instrument may even without consideration discharge any party:

"(a) In any manner apparent on the face of the instrument or the indorsement, as by intentionally canceling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or . . ."

[10] Sec. 403.601 (3), Stats., provides:

"(3) The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument:

"(a) Reacquires the instrument in his own right; or . . ."

Based upon the allegations of the complaint and the papers incorporated therein,[11] construed according to the rules enumerated above, the plaintiff is not proceeding on the Akwa-Downey notes but upon a breach of the contract of guaranty. The complaint does not allege nor do the notes show that the defendants' signatures appear thereon as guarantors of the notes. Under Wisconsin statutes, liability on a negotiable instrument is statutorily limited to persons whose signatures appear thereon.[12] *Jennaro v. Jennaro, supra.* The remedy against a guarantor is not primary and direct, but collateral and secondary, and an action to enforce the liability of the guarantor must be in the form of an action for damages for a breach of the contract of guaranty, and not an action upon the underlying indebtedness.[13] While the affirmative defenses, as asserted by the defendants, concerning the possession, transfer and cancellation of the notes, may be fatal to plaintiff's cause of action, if he were proceeding upon the instruments,[14] they are not necessarily fatal to plaintiff's cause of action upon its separate and independent contract of guaranty with the defendants.

## *Payment and satisfaction.*

Defendants contend that the settlement agreement reached between the plaintiff and Akwa-Downey demon-

[11] Papers attached to the complaint and "incorporated herein and referred to as though set forth herein in full" must be considered a part of the pleadings and may be resorted to in determining the sufficiency thereof. *Jennaro v. Jennaro, supra,* page 411.

[12] Sec. 403.401, Stats., provides:

"**Signature.** (1) No person is liable on an instrument unless his signature appears thereon.

"(2) . . ."

[13] *See:* 38 C. J. S., *Guaranty,* p. 1253, sec. 84.

[14] The fatality of such defenses upon a cause of action on the instruments is not determined by this court on this appeal.

strates a full and complete accord and satisfaction between the parties, and that the payment made under that agreement by Akwa-Downey to plaintiff was not a part payment resulting in a deficiency but a payment in full satisfaction of the Akwa-Downey indebtedness to the plaintiff. Defendants conclude that payment or satisfaction of the principal debt discharges the guarantors.

A guarantor's liability depends upon the terms of his engagement. *Zrimsek v. American Automobile Ins. Co.* (1959), 8 Wis. 2d 1, 98 N. W. 2d 383; 50 Am. Jur., *Suretyship*, p. 921, sec. 29. Defendants' contract of guaranty promises "to pay or cause to be paid" all the indebtedness, obligations and liability from or by Akwa-Downey to the plaintiffs. A guaranty, in its technical sense, is collateral to, and made independently of, the principal contract which it guarantees, and the guarantor's liability is secondary rather than primary or original. *Associates Financial Services v. Eisenberg* (1971), 51 Wis. 2d 85, 186 N. W. 2d 272; 38 C. J. S., *Guaranty*, p. 1130, sec. 2. As a general rule the payment or other satisfaction or extinguishment of the debt or obligation of the principal discharges the guarantor.[15] As stated in 50 Am. Jur., *Suretyship*, p. 983, sec. 121:

". . . Since a surety is bound only by the condition of his obligation, the principal's performance of the condition will release him. Since the natural limit of the obligation of a surety is to be found in the obligation of the principal, when that is extinguished, the surety is, in general, liberated. . . ."[16]

Since the guarantor's promise is to pay or perform if the debtor does not, the guarantor will be discharged when

[15] 38 C. J. S., *Guaranty*, p. 1245, sec. 77.

[16] *See also:* Restatement, *Security*, p. 302, sec. 115; Simpson, *Suretyship* (hornbook series, 1950), p. 313, sec. 69.

the principal pays the debt or performs the undertaking. The creditor is entitled to but one performance, and if he receives that, by payment or other satisfaction, the surety is discharged.[17]

However, the duty of the principal must be fully satisfied and, if the principal only partially performs, a surety's obligation continues, although the amount which the creditor can recover from the surety is reduced by what he has received from the principal. The Restatement, *Security*, p. 304, sec. 115, states:

"It is to the interest of the surety that the creditor be allowed to take reasonable steps to satisfy his claim against the principal without discharging the surety. Any other rule would mean that whenever the principal owed a money obligation and was unable to make an immediate cash payment, the creditor to avoid discharging the surety, would proceed immediately against the latter."

Defendants draw this court's attention to such words contained in the settlement as "full and complete settlement" and "in full payment." Defendants argue that while the Akwa-Downey indebtedness was $622,579.03, and plaintiff received only $559,000 in cash, plaintiff was also released from disputed claims asserted to be worth $180,000. Defendants conclude that no underlying debt exists and that the guaranty contract of the defendants is satisfied.

Paragraph 7 of the complaint alleges a deficiency due of $86,448, plus interest. Paragraph 9 of the settlement agreement reserves rights in the plaintiff to proceed against the defendants upon the guarantees to assure payment of the loans being "compromised." There may be ambiguity in the settlement agreement as to whether the agreement constituted a full and complete payment of the debt. The resolution of this possible ambiguity

[17] 10 Williston, *Contracts* (3d ed. 1967), p. 721, sec. 1219.

will eventually rest upon proof of the intent of the parties thereto; however, when challenged by demurrer, this court must construe the above agreement in favor of that interpretation that would support a cause of action. Therefore, for the purposes of this appeal, it cannot be said that the Akwa-Downey debt, alleged in the complaint as underlying defendants' contract of guaranty, has been alleged as fully satisfied. Whether the claims released by Akwa-Downey in favor of the plaintiff are of sufficient value to make up the apparent deficiency is a matter to be decided upon trial, not demurrer.

### Release of the principal.

Defendants argue that inasmuch as the settlement agreement was a release of Akwa-Downey from further liability upon the debts, evidenced by the notes alleged, such release also released the defendants from liability on the debt.

Generally, release of principal also releases the surety. *National Bank of La Crosse v. Funke* (1934), 215 Wis. 541, 255 N. W. 147; Stearns, *Suretyship*, p. 174, sec. 6.42; 50 Am. Jur., *Suretyship*, p. 987, sec. 126. The reasons behind such a rule are stated in Simpson, *Suretyship* (hornbook series, 1950), pp. 296-301, sec. 63:

"It has always been held that the creditor's release of the principal discharges the surety. The reason most often given is that since the debt is discharged, the surety's right to be subrogated to the remedies thereon has been destroyed by act of the creditor. Upon payment, the surety is entitled to be subrogated to the creditor's claim and secure a judgment upon it in a suit. Since the release would be a defense to the principal in such a suit, the surety must be discharged. Any unwarranted interference by the creditor with those rights of the surety which are resultant after payment relieves the

surety of the liability to pay; not because the creditor is to be penalized, but because the surety is to be protected in his rights. . . .

"Various other reasons have been advanced for the rule that the creditor's release of the principal discharges the surety. It has been said that the surety's obligation is so far accessory that it cannot survive extinguishment of the principal's debt. Otherwise stated, that 'no collateral promise to pay the debt of another can have any force when the debt of the other has been satisfied.' The Restatement of Security advances this reason in terms as follows: 'Where the principal and surety are not bound jointly, but the obligation of the surety is to answer for the duty of the principal, the termination of the principal's duty is also a termination of the surety's obligation. If the principal has no longer a duty as a result of the creditor's act, the surety should not be held to an obligation to answer for a default of that duty.' . . .

"Another reason for the rule, advanced by a learned English judge, is 'the reason why a simple release of the principal debtor discharges the surety is, that it would be a fraud on the principal debtor to profess to release him, and then to sue the surety, who would in turn sue him.' The Restatement of Security puts this reason persuasively as follows: 'If the surety could be compelled to pay after the principal's release, he would be entitled to reimbursement if he had become surety at the principal's request or with his consent. Such an outcome would be unfair to the principal after a release because it would afford the creditor a means of attacking the principal indirectly through the surety.' . . .

"A reason better than any of the foregoing for discharging the surety is that payment by the surety after the creditor has voluntarily released the principal was not contemplated. When a surety contracts, he does so for the purpose of protecting the creditor from loss or inconvenience caused by the principal's nonperformance, but the nonperformance contemplated is one that is not caused or encouraged by the creditor himself. It could not have been contemplated that the surety should make good a debt that all parties originally expected the principal to pay when the creditor, by giving him a

release, causes him not to pay. If the creditor makes performance by the principal impossible, it is quite clear that he has no recourse against the surety; he causes the principal's nonperformance. The function of a surety is to protect his promisee against loss caused by the principal, but not against that caused by the promisee himself. . . ."

Two exceptions have developed to this rule. Where the creditor releases a principal, the surety is discharged unless the creditor in the release reserves his rights against the surety or the surety consents to remain liable notwithstanding the release.[18]

It is generally held that where the creditor releases the principal, an express reservation will preserve his claim against the surety.[19] The release is construed as a covenant not to sue, thus the principal debt remains alive and the surety is not discharged. In Simpson, *Suretyship* (hornbook series, 1950), pp. 302, 303, sec. 64, it is stated:

"The rule that the surety is discharged by the creditor's release of the principal is not applied when the release reserves to the creditor his remedies against sureties. When the principal accepts a release containing such a reservation, he is said impliedly to consent that the surety's rights shall not be impaired. An interpretation that a release with reservation of rights against the surety is actually a release discharging the debt gives effect only to the word release, and would disregard the reservation, and so is not admissible. The only interpretation which gives effect to the whole agreement of the parties is that which construes it as a covenant not to sue. It follows that the debt is not discharged, and so the surety's remedies thereon remain unaffected. Since this is so, the surety remains liable to the creditor. 'The creditor, by a release with reservation of rights against the surety, was in effect notifying the principal

[18] Restatement, *Security*, p. 322, sec. 122.
[19] 10 Williston, *Contracts* (3d ed. 1967), p. 738, sec. 1230.

that, in spite of the release, the surety might pay as the result of compulsion or voluntarily and that the principal would then be liable to reimburse the surety.' "

Defendants concede that a reservation of rights preserves the creditor's rights against the surety, but argue that the reservation was not effective in the instant case, in that the transfer and cancellation of the notes effectively destroyed defendants' right of recourse, notwithstanding the express reservation, and that, in fact, defendants' liability is increased by the release of the principal.

The former contention has been discussed and what has been previously said is applicable here. While defendants' last argument points to a criticism of the above-mentioned exception to the rule, the majority of courts have rejected such attacks. It is stated in Simpson, *Suretyship* (hornbook series, 1950), pp. 303, 304, sec. 64, that:

"A serious criticism of the rule is that it assumes, contrary to fact, that since the surety's rights after payment, of subrogation and reimbursement, continue after a release with reservation, the surety has suffered no injury. But actually he has suffered a very serious one, in that his risk of having to pay the debt has been materially increased. When the surety contracts, he assumes the risk of having to pay the debt if it is not paid by his principal, but he contemplates that his principal shall continue to have all the compulsion to perform that his undertaking originally placed upon him. By the creditor's release, whether with or without reservation of rights against sureties, some of this compulsion is removed, and the creditor thereby makes it certain that the principal, who was originally expected by all parties to perform as he agreed, will not do so. To hold the surety liable under such circumstances is unjust, because it imposes upon him a wholly different risk from that which he intended to assume. The answer to this objection, which is implicit in the decisions, is that any hope

or expectation or right which the surety has that the principal will pay and so relieve the surety from the necessity of doing so lies between the surety and the principal. As to the creditor, the surety has promised to pay; and so long as the creditor has done nothing which destroys the [sic] or postpones the surety's legal rights consequent upon payment, the surety is not discharged. . . ."

In the instant case, plaintiff's agreement with Akwa-Downey, and others, expressly reserved the rights of the plaintiff to proceed against defendants. The defendants were not discharged by the settlement agreement and subsequent release of Akwa-Downey.

The complaint states a good cause of action on the contract of guaranty and the plaintiff has not inadvertently or otherwise created or conceded affirmative defenses fatal to the plaintiff's cause of action.

While the plaintiff raises the issue as to whether the complaint alleges a cause of action in tort, based upon certain "unauthorized actions" on the part of the defendants, it is unnecessary for this court to rule thereon since the trial court's order overruling the demurrer must be sustained and the case remitted for further proceedings.

*By the Court.*—Order affirmed.