HICKORY SPRINGS MANUFACTUR-
ING COMPANY, INC., Petitioner,

v.

Glenn EVANS and Howard
Gose, Respondents.

v.

Michael MEHLMAN et al., Third-Party
Defendants.

Supreme Court of Tennessee.

April 26, 1976.

Rehearing Denied Sept. 27, 1976.

Clinton R. Anderson, Anderson & Anderson, Morristown, for petitioner.

James M. Davis, James K. Miller, Morristown, for respondents.

Dennis H. Inman, Taylor, Inman & Tilson, Morristown, for third party defendants.

### OPINION

FONES, Chief Justice.

This suit against two guarantors was decided adversely to the creditor in both of the courts below.

Evans and Gose owned all of the stock of Star-Line Manufacturing Company, a Tennessee corporation, in February, 1970, when the guaranty was executed. Star-Line, a furniture manufacturer, was purchasing materials from petitioner on a C.O.D. basis. For the purpose of establishing a line of credit, respondents Evans and Gose agreed to individually guarantee the indebtedness of Star-Line to the extent of ten thousand ($10,000) dollars.

In February, 1972, Evans purchased the stock of Gose.

In November, 1973, Evans began negotiating with Jarnagin for the sale of Evans' stock in Star-Line. At that time, $34,866.90 was owed to petitioner. In addition, Star-Line had a bank overdraft of $45,000, and all of its assets were encumbered to secure other indebtedness.

Jarnagin contacted representatives of petitioner, disclosed this information, and suggested that he, along with others, would be willing to acquire Star-Line and attempt to salvage the company if petitioner would accept payment of fifty (50%) percent of the debt. Petitioner initially refused this offer; but when it was pointed out that if the settlement were not effected, Star-Line would go into bankruptcy and it would only receive five (5%) percent of the debt, petitioner accepted.

Star-Line and petitioner did not execute a written instrument of compromise and settlement of the $34,866 debt. However, documentary evidence and the testimony of petitioner's secretary-treasurer provide material evidence in support of the factual finding of the Chancellor and the Court of Appeals that petitioner agreed to accept $17,433.45 from Star-Line in full and final settlement of the debt. That concurrent finding supported by material evidence is conclusive in this Court. T.C.A. § 27–113.

Subsequent to the settlement, petitioner demanded that respondents Evans and Gose honor their guaranty and pay ten thousand ($10,000) dollars. Respondents refused and this lawsuit was brought to compel payment.

The Chancellor held that the release of the principal, Star-Line, discharged the surety, and the case was dismissed.

■ The Court of Appeals affirmed, holding that the paragraph in the guaranty in which respondents "consented" to be held liable for the full amount of the debt, notwithstanding any settlement or compromise between petitioner and Star-Line, was applicable only to involuntary situations such as bankruptcy, receivership and reorganization, and not applicable to a voluntary settlement. We disagree.

The applicable provisions of the guaranty agreement are as follows:

"The liability of the undersigned shall not exceed the sum of Ten Thousand Dollars ($10,000.00) but such liability shall extend to all present and future indebtedness from time to time of said debtor to creditor and shall not be affected by said debtor's insolvency, at any time or by said creditor's acceptance of · security, notes, acceptances, drafts or checks, or by assignment, foreclosure or other dispositions thereof by said creditor, at any time, or by said creditor presenting or proving for allowance any secured or unsecured claim or demand, or by creditor's acceptance of any composition, plan of reorganization, settlement, compromise, dividend, composition, payment of distribution; and the undersigned shall not be entitled to claim any right in, or benefit by reason of, any such composition, plan of reorganization, settlement, compromise, dividend, payment or distribution, or in or reason of any security held by creditor, or the proceeds of the foreclosure or other disposition thereof, until and unless all of said indebtedness, interest thereon, attorney's fees and cost, above mentioned, shall have paid in full.

The undersigned hereby waive—notice of the acceptance of the within guaranty and notice of the original and extended due dates and non-payment of any indebtedness of said debtor to creditor and hereby waive demand for payment and protest of any and all of said indebtedness, notes, acceptances, drafts and checks and hereby consent—to any and all extensions of time for payment thereof, however, effected."

■ Under the general principles of suretyship law, a release of the principal also releases the surety to the extent that the principal is released. *Becker v. Faber,* 280 N.Y. 146, 19 N.E.2d 997 (1939); 74 Am. Jur.2d, *Suretyship* § 45; 121 A.L.R. 1014. The surety is not released, however, if the creditor in the release reserves his rights against the surety, or if the surety consents to remain liable notwithstanding release of the principal. *Continental Bank & Trust Co. v. Akwa,* 58 Wis.2d 376, 206 N.W.2d 174 (1973); *Shows v. Steiner, Lobman & Frank,* 175 Ala. 363, 57 So. 700 (1911); RESTATEMENT OF SECURITY § 122.

■ In the guaranty agreement quoted above, respondents clearly consented to remain liable notwithstanding any "settlement" or "compromise." By the terms of the agreement, the guaranty is not expressly limited to involuntary situations, nor do we think the parties intended the agreement to be so limited. As the terms of a commercial guaranty agreement are to be construed as strongly against the guarantor as the sense will admit, *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801 (Tenn. 1975), we hold that the agreement contemplated voluntary as well as involuntary settlements and compromises, and that respondents remain liable on their guaranty.

In *Shows v. Steiner et al., supra,* the guaranty agreement authorized the creditor to grant time, other indulgences or "compound with" the principal without affecting the obligation of the guarantor. A plea setting up a compromise as a defense to the suit to enforce the guaranty was denied because of the express provision continuing the liability of the surety after extinguishment of the principal's debt.

In their cross-complaint, respondents maintain that if they are found liable on their guaranty agreement, they should be subrogated to the rights of the creditor and entitled to reimbursement from the successors in interest of the principal, Star-Line.

Respondents misconstrue the law of subrogation.

■ The doctrine of subrogation is an equitable one, and it is recognized that the payment of an obligation by a surety entitles him to stand in the place of the creditor and be substituted to all of the rights of the creditor against the principal. *Payne v. Standard Acc. Ins. Co.*, 259 S.W.2d 491 (Ky. 1952); Restatement of Security § 141; 73 Am.Jur.2d, *Subrogation* § 53.

■ Here the creditor's right against the principal have been extinguished by the complete release given Star-Line. The debt having been extinguished, there remains nothing to which respondents could be substituted. They expressly agreed to this legal consequence by contracting to remain liable in spite of any compromise settlement of the debt. *Cf. Uzzell v. Mack*, 23 Tenn. 319 (1843).

■ Nor were respondents, or either of them, released from the terms of the guaranty agreement. The agreement contained a voluntary revocation clause whereby respondents could revoke their guarantee of any future indebtedness at any time merely by giving proper notice. This notice was not given, and petitioners remain liable to the full extent of their ten thousand ($10,-000) dollar guaranty agreement.

The cause is reversed and remanded to the Chancery Court of Hamblen County for the entry of a decree awarding a judgment in favor of petitioners and the enforcement thereof. Costs are adjudged against the respondents.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.

## OPINION ON PETITION TO REHEAR

FONES, Justice.

Guarantors, Evans and Gose have filed a petition to rehear urging reconsideration of the Court's rulings adverse to them on the guarantee agreement and their third party complaint against Star-Line, et al.

■ We are satisfied that we have correctly construed the liability of guarantors under the written contract of guarantee. Evans and Gose owned the corporation and were its officers at the time they agreed to guarantee the future indebtedness of Star-Line to Hickory Springs Manufacturing Company, for the purpose of enabling Star-Line to purchase materials on credit. The contract was an absolute continuing guarantee, until such time as guarantors might give written notice by registered mail, of revocation, which revocation would not have affected any indebtedness existing at the time of any such revocation. Evans and Gose acknowledged that they had not attempted to revoke the guarantee at any time. Their obligation was not a mere suretyship undertaking for which the law prescribes the scope of liability and defenses thereto, but an express contractual agreement to be bound for the full amount of the indebtedness in the event of a compromise settlement with Star-Line for a lesser sum. They were not accommodation guarantors, as the corporation they owned received a continuing line of credit not available without their guarantee. Evans, as president of the corporation was continuously aware of the amount of the debt. Jarnagin testified that Evans was told that negotiations were being conducted with Hickory Springs to settle the indebtedness for less than the full amount, prior to the purchase of Evans stock. The financial condition of Star-Line and the history of the Jarnagin groups negotiations with Evans to purchase his one hundred (100%) percent stock interest, provide almost conclusive inferences that Evans was aware of the negotiations. There was no contradiction of Jarnagin's testimony that he told representatives of Hickory Springs that his group could not purchase Star-Line unless the debt was reduced and that if they "walked out" the company faced almost certain bankruptcy with the prospect of five cents on the dollar for creditors. These facts could not have escaped Evans' attention and the consummation of the settlement was obviously of benefit to him as he received fifteen thousand ($15,000) dollars

for his stock, that was on the brink of total disaster.

Guarantors mistakenly assert that we rejected their third party subrogation action on the authority of *Uzzell v. Mack, supra.* The result of that case was to allow Uzzell, the surety, to pursue the purchase money lien held by Howser, the holder of the note paid by Uzzell, after the principal maker defaulted. However, the opinion states the principle that when a surety discharges a judgment, it is extinguished and there is nothing to which he can be substituted. That statement is analogous to the statements in the text of our opinion preceding the citation of *Uzzell,* and we used the uniform citation[1] signal *cf.* to so indicate.

Guarantors rely upon T.C.A. § 25–323 et seq. Those code sections applicable to suretyship have no relevance where a contract of guarantee authorizes a compromise settlement of the principal's debt, and expressly retains the liability of the guarantor for the balance. Such a contract permits the extinguishment of the principal debt and although, to the extent of payment, the guarantor stands in the shoes of the creditor, there is nothing—no cause of action—to which he can be substituted, because the right of subrogation equitable or by statute has been contracted away.

Finally, this Court cannot award any relief to the third party plaintiffs, Evans and Gose. No petition for the writ of certiorari was filed on their behalf. The petition of Hickory Springs and our grant of the writ brought only the original action to this Court.

The petition to rehear is denied.

COOPER, C. J., and HENRY, BROCK and HARIBSON, JJ., concur.

1. A Uniform System Of Citation, Eleventh Edition, Published and Distributed by The Harvard Law Review Association.