**TRAILER RENTAL COMPANY, INC., Plaintiff,**

v.

**James R. BUCHMEIER, Gerald R. Buchmeier and BTI Transportation, Inc., Defendants.**

No. 92–C–490.

United States District Court, E.D. Wisconsin.

June 25, 1992.

Howard, Solochek & Weber by Jean Bogue and Andrew Herbach, Milwaukee, Wis., for plaintiff.

No Appearances (defendants in default).

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiff, Trailer Rental Company, is a Georgia corporation in the business of leasing trailers (for over-the-road trucking). The present action was commenced on May 4, 1992, with the filing of what the plaintiff titled a "Complaint and Petition/Motion for Injunctive Relief" naming James R. Buchmeier, Gerald R. Buchmeier, and BTI Transportation as defendants. That "hybrid" pleading notwithstanding, on May 15, 1992, the plaintiff filed a "Motion for a Temporary Restraining Order and Preliminary Injunction," along with a supporting memorandum. *See* Rule 7(b)(1), Federal Rules of Civil Procedure (requiring that an application for an order be made by motion).

The complaint does not specifically allege the basis for the court's subject matter jurisdiction, although the allegations of the complaint satisfy the court that there is complete diversity of citizenship and that the amount in controversy exceeds $50,000, *see* 28 U.S.C. 1332(a)(1). The corporate plaintiff is a citizen of Georgia; the defendants are all citizens of Wisconsin. The complaint and exhibits demonstrate that the equipment giving rise to the controversy has a value in the neighborhood of $576,000.

The plaintiff has filed affidavits indicating that service of the summons and complaint was effected on the defendants as follows: James Buchmeier on May 7, 1992; Gerald Buchmeier on May 10, 1992; and BTI Transportation (by service upon its registered agent Gerald Buchmeier) on May 10, 1992. The defendants did not timely respond to the complaint, *see* Rule 12(a), Federal Rules of Civil Procedure, and are presently in default. The defendants also failed to respond to the plaintiff's "Motion for a Temporary Restraining Order and Preliminary Injunction," which motion was personally served upon each of them (along with its supporting materials) on or before May 16, 1992. On June 4, 1992, the court conducted a hearing on the plaintiff's motion; the defendants failed to appear at the hearing.

Because the plaintiff has not demonstrated its entitlement to injunctive relief from the named defendants, the motion will be denied.

### I.

In a complaint laced with the phrase "upon information and belief," the plaintiff alleges that on May 15, 1986, it entered a lease agreement with Badger Lines, Inc., a corporation that the plaintiff claims is no longer conducting business operations. Pursuant to the lease agreement, the plaintiff leased to Badger Lines certain "items of equipment"—consisting of approximately 90 trailers. Defendant James Buchmeier, who was president of Badger Lines, executed the relevant agreements on its behalf. The duration of the lease agreement was 72 months.

The plaintiff alleges that Badger Lines is in default of the lease agreement because it failed to make lease payments and failed to "maintain and repair" the trailers, as required under the agreement. In support of that allegation, the plaintiff has provided (as an exhibit to its complaint) a letter dated February 10, 1992, in which Badger Lines (by its president, defendant James Buchmeier) "acknowledged termination of the lease" based upon its default. Furthermore, the plaintiff has produced with its complaint an "Indemnity Agreement" between Badger Lines and it. (That agree-

ment is "dated" as follows: "the _____ day of June, 1989.") In the indemnity agreement, Badger Lines assumed, among other things, an obligation to hold the plaintiff harmless in the event the trailers were lost or damaged.

Although Badger Lines is alleged to have violated the terms of the lease and indemnity agreements, it is not a party to this action. As the plaintiff acknowledges in its complaint, on February 11, 1992, Badger Lines filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Wisconsin (Case No. 92–00872–JES–7). While the plaintiff has not sought relief in the bankruptcy court from Badger Lines, who is by its own admission in default, it has instead sought relief in *this* court from other persons.

Two of the three defendants, James Buchmeier and Gerald Buchmeier, are *also* alleged to "be in default under the agreements"—namely Badger Lines' lease and indemnity agreements. In its complaint, the plaintiff seeks relief from those defendants in their *personal* capacities. (Badger Lines would be the real party in interest in any action asserted against those defendants in their respective capacities as corporate officers.) However, the allegations of the complaint (and accompanying exhibits) reveal that defendants Gerald Buchmeier and James Buchmeier, in their personal capacities, have executed only one relevant "agreement": an *undated* "continuing guaranty" under which they assumed liability for Badger Lines' financial obligations to the plaintiff. (This document is included as an exhibit to the complaint; it is also included as Appendix A to this decision and order.) The record reveals that the specific subject matter of the "continuing guaranty" is Badger Lines' lease and indemnity agreements.

The remaining defendant, BTI Transportation, has but a tenuous link to the present action. Badger Lines, as it is alleged, is no longer conducting business and is no longer using the plaintiff's trailers. It is the plaintiff's *belief* that BTI Transportation, a Wisconsin corporation, "has possessed and used" the trailers since Badger Lines ceased business operations. For no apparent reason other than a concern that BTI Transportation will claim a superior possessory interest, the plaintiff has named it as a defendant.

In the pertinent portion of its complaint, the plaintiff seeks "injunctive relief in equity," calling upon all defendants to "assemble ... in locations reasonably convenient to plaintiff" the fugitive trailers. The plaintiff also seeks a money judgment from defendants James Buchmeier and Gerald Buchmeier. The only discernable legal basis for the relief sought against defendants James Buchmeier and Gerald Buchmeier is what the court has construed to be a breach of contract claim—the "contract" being the "continuing guaranty." In addition, the court finds that the complaint may be construed to include a request for a declaratory judgment reconciling the respective possessory interests of the plaintiff and BTI Transportation in the trailers.

## II.

■ The title of the plaintiff's application ("Motion for a Temporary Restraining Order and Preliminary Injunction") and the defendants' failure to appear or to defend cast the exact nature of the plaintiff's application into some degree of uncertainty. As the court of appeals for the seventh circuit has recently noted, there is a difference between a temporary restraining order—with its brevity, ex parte character, and informality—and a preliminary injunction: the latter is appealable, the former is not. *See Geneva Assurance Syndicate, Inc. v. Medical Emergency Services Associates, S.C.*, 964 F.2d 599, 600 (7th Cir. 1992) (per curiam); *see also* 28 U.S.C. § 1292(a)(1).

At the hearing, the plaintiff requested that the court treat its motion as one for a preliminary injunction. During the hearing, the plaintiff also demonstrated that the defendants had been personally served with prior notice of the hearing. Although the defendants did not embrace their opportunity to be heard, the court is satisfied that the motion should be treated as one for a preliminary injunction.

Under the legal standard of this circuit, a party seeking a preliminary injunction must demonstrate the following:

■ that it has no adequate remedy at law; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm it will suffer if the preliminary injunction is not granted outweighs the irreparable harm the defendant will suffer if the injunction is granted; (4) that it has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest.

*Nalco Chemical Co. v. Hydro Technologies, Inc.*, 791 F.Supp. 1352, 1353 (E.D.Wis. 1992) (Gordon, J.). *See also West Allis Memorial Hospital, Inc., v. Bowen*, 852 F.2d 251, 253 (7th Cir.1988); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386–88 (7th Cir.1984); Rule 65(a), Federal Rules of Civil Procedure.

### III.

#### A.

■ The application of the preliminary injunction standard presupposes that the plaintiff has named the "right" persons as defendants—persons from whom such equitable relief is available. In this action, it is not obvious that the plaintiff has done so.

■ The court must note the absence of any basis for injunctive relief against defendant BTI Transportation. When questioned by the court at the hearing, the plaintiff conceded that it has had no relationship—contractual or otherwise—with that defendant. *See* Transcript of June 4, 1992, Hearing at 6, 13–14. The plaintiff has never substantiated its allegation that BTI Transportation will claim a superior possessory interest in the trailers. Nor did it demonstrate that BTI Transportation now "possesses" any trailers. To the extent that the plaintiff requests injunctive relief against BTI Transportation, the request must be denied.

■ Moreover, the court has not fully been convinced by the plaintiff's argument that Badger Lines' petition for bankruptcy

merits no consideration—even *if* Badger Lines is not a defendant in this action. Indeed, it would appear that the present action is in reality an effort by the plaintiff to avoid the jurisdiction of the bankruptcy court. There is no question that debtor Badger Lines entered the lease and indemnity agreements—which agreements are the font of this litigation; and it is Badger Lines that acquired a true possessory interest in the now-fugitive trailers.

The plaintiff has produced a copy of a letter in which Badger Lines' trustee-in-bankruptcy purports to "abandon" the trailers that are subject to the lease agreement. (The copy of the letter is included as Appendix B.) However, that letter does not demonstrate that the abandonment was preceded by the requisite hearing in the bankruptcy court, *see* 11 U.S.C. § 554(a) ("After *notice and a hearing,* the trustee may abandon any property of the estate that is burdensome to the estate...."). Moreover, the court believes that the matter may be more complicated than the plaintiff suggests. Disputes arising under a debtor's lease agreement are governed by another section of the bankruptcy code—a section not addressed by the plaintiff—calling upon the trustee to reject or accept such agreements. *See* 11 U.S.C. § 365. As has been noted in like circumstance, "[r]ejection [of a lease agreement] is a different issue from abandonment [of leased property]." *In re Dant & Russell, Inc.*, 67 B.R. 360, 364 (D.Or.1986).

Furthermore, even if the trustee-in-bankruptcy has validly abandoned the trailers from Badger Lines' bankruptcy estate in compliance with 11 U.S.C. § 554(a), title to the trailers would then revest in debtor Badger Lines. *See In re Thomas*, 204 F.2d 788, 792 (7th Cir.1953) (upon abandonment by the bankruptcy estate, title revests in the bankrupt). Thus, irrespective of the validity of the abandonment, either Badger Lines *or* its bankruptcy estate retains responsibility for the trailers. In either case, Badger Lines (or its trustee) is the entity from whom the plaintiff should seek delivery of the remaining fugitive trailers. (At the hearing, the plaintiff informed the

court that it has already located 43 of the 90 trailers subject to the lease agreement.)

Even in the absence of Badger Lines, the plaintiff may be entitled to injunctive relief if such relief is available from defendants James Buchmeier and Gerald Buchmeier. As noted, the only ostensible basis for the plaintiff's claim to equitable relief against those defendants relates to their personal guaranty of non-party Badger Lines' lease and indemnity agreements. Accordingly, the court is called upon to interpret the guaranty; unaided by the plaintiff, the court has turned to Wisconsin law for the solution of the relevant legal questions raised in this diversity action.

■■■■ Under Wisconsin law, a guaranty is a contract. Accordingly, "[a] guarantor's liability depends upon the terms of his [or her] engagement." *Continental Bank & Trust Co. v. Akwa*, 58 Wis.2d 376, 388, 206 N.W.2d 174 (1973) (referring to a guaranty as a "contract of guaranty"). Moreover, as a general principle of Wisconsin law, "[a] guaranty is collateral to, and made independently of, the principal contract which it guarantees, and the guarantor's liability is secondary rather than primary or original." *Klein–Dickert Oshkosh, Inc. v. Frontier Mortgage Corp.*, 93 Wis.2d 660, 668, 287 N.W.2d 742 (1980) (*quoting Continental Bank & Trust Co. v. Akwa*, 58 Wis.2d 376, 388, 206 N.W.2d 174 (1973)). However, a creditor may proceed with an action against a guarantor without having commenced any proceedings against the principal debtor, *see First Wisconsin National Bank of Oshkosh v. Kramer*, 74 Wis.2d 207, 212, 246 N.W.2d 536 (1976). *See also Schlesinger v. Schroeder*, 210 Wis. 403, 408–09, 245 N.W. 666 (1933) (creditor was "entitled to immediate recovery" from the guarantors before any efforts to recover from the principal debtor). That the principal debtor is in bankruptcy does not, without more, relieve the guarantor from an obligation assumed under a guaranty. *See, e.g., Plaza of the Americas, Ltd. v. Rodgers*, 728 S.W.2d 827, 828 (Tex.Ct.App.1987) (guaranty of lease agreement); *Peterson v. Midas Realty Corp.*, 160 Ga.App. 333, 287 S.E.2d 61, 62

(1981) (same); *W.J. Seufert Land Co. v. Greenfield*, 262 Or. 83, 496 P.2d 197, 201–02 (1972) (same).

Thus, the plaintiff may proceed with this action against defendants James Buchmeier and Gerald Buchmeier, the guarantors, to enforce the guaranty even though it has not initially sought redress from Badger Lines, the principal debtor. However, because the action is one to enforce the guaranty, a contract, the plaintiff's entitlement to relief is limited to the "terms of the engagement," *see Akwa*, 58 Wis.2d at 388, 206 N.W.2d 174. Upon examination of the claim for relief, the court is convinced that the plaintiff has misconstrued the "terms of engagement" contained in the continuing guaranty.

At the hearing, the attorney for the plaintiff stated as follows:

> [W]e're naming them [defendants James Buchmeier and Gerald Buchmeier] because they signed the guarantee [sic], whereby they guaranteed to [the plaintiff] that they would satisfy *all the obligations* of Badger Lines to [the plaintiff].

Transcript of June 4, 1992, Hearing at 8 (emphasis added). That statement and the following colloquy demonstrate the misapprehension under which the plaintiff has labored:

> MS. BOGUE [for the plaintiff]: And [Badger Lines' lease] agreement specifically states that upon termination of the agreement, which did happen in February of 1992, when the defendants [sic] went into default, upon—paragraph 13 of the lease agreement states that, "Upon the expiration or similar termination of this agreement with respect to any item of equipment, lessee shall return the equipment to lessor in good condition and working order, ordinary wear and tear excepted."
>
> THE COURT: Why does that translate into three other people, the named defendants here[,] doing that?
>
> MS. BOGUE [for the plaintiff]: Because under the personal guarantee [sic], the Buchmeiers guaranteed that *all obli-*

*gations* of Badger Lines would be satisfied.

Transcript of June 4, 1992, Hearing at 13 (emphasis added).

Having closely scrutinized the "continuing guaranty," the court finds that the plaintiff has placed an unwarranted gloss on its terms. It may well be true that a case may arise where a creditor is entitled to an alternative form of recompense from a guarantor. *Cf. Harris v. Metropolitan Mall,* 112 Wis.2d 487, 504, 334 N.W.2d 519 (1983) (where the guarantors to a lease agreement agreed to pay "for all damages relating from the breach of the lease," the guaranty was construed to obligate the guarantors to make "restitution" to the creditor). The present action is not such a case.

Although the obligation of the guarantors flows from Badger Lines' lease and indemnity agreements, it is limited by the "terms of engagement" of the continuing guaranty. The terms of the guaranty speak only of "indebtedness" and "lease payments." Those terms imposed upon the guarantors, defendants James Buchmeier and Gerald Buchmeier, nothing more than a *financial* obligation. Nothing in the guaranty caused them to assume physical control over—or responsibility for—the equipment referenced in the underlying lease and indemnity agreements (90 trailers). Although the financial burden imposed upon the guarantors may prove to be onerous in its own right, nowhere in the guaranty did the guarantors undertake the heavy burden to satisfy "all obligations" of Badger Lines.

In my opinion, the plaintiff is constrained by the terms of the continuing guaranty. Accordingly, while the plaintiff certainly may call for the guarantors, defendants James Buchmeier and Gerald Buchmeier, to honor the financial obligation they assumed under the guaranty, the plaintiff is entitled to no more than that. The court cannot saddle defendants James Buchmeier and Gerald Buchmeier with an obligation that they did not agree to assume under their guaranty. The equitable relief sought by the plaintiff is not available from those defendants.

The inescapable conclusion, as already noted, is that in the absence of Badger Lines—which is responsible for the trailers even if its trustee-in-bankruptcy has "abandoned" them—the injunctive relief the plaintiff seeks is unavailable.

### B.

■ Having failed to bring the "right" defendant before the court, the plaintiff is disentitled to the injunctive relief it seeks. However, that is not the only reason. Even if it can be said that the plaintiff will meet with "success on the merits," given that the defendants are in default, the plaintiff has not demonstrated its entitlement to a preliminary injunction under the governing legal standard.

Most prominently, the plaintiff has not demonstrated that it is without an adequate remedy at law. In its supporting memorandum (and during the hearing), the plaintiff gave little attention to this requirement. The court is satisfied that the plaintiff readily *does* have an adequate remedy at law: it can recover money damages from the responsible defendants to compensate it for the loss, damage, or disrepair of the trailers.

Furthermore, the record does not disclose that the plaintiff will suffer irreparable harm if the court does not order the return of the trailers: the record does not show the trailers to be unique in any way. Thus, with adequate financial compensation, the plaintiff can replace or repair the trailers to the extent necessary. If other circumstances exist to suggest how the plaintiff will suffer irreparable harm, they have not been convincingly disclosed.

Having failed to demonstrate the inadequacy of money damages or the existence of irreparable harm, the plaintiff is not entitled to a preliminary injunction.

### ORDER

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction be and hereby is denied.

APPENDIX A

## CONTINUING GUARANTY

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned ...............................................

James R. Buchmeier

Gerald R. Buchmeier

(The name of each guarantor)

and each of them hereinafter called the "Guarantors", do hereby, jointly and severally, guarantee to ........Trailer Rental..........

Company-Lessor

......................................................................................................hereinafter called the "Finance Company", that

Badger Lines, Inc.                                      Milwaukee, Wisconsin

(Principal Debtor)                                        City and State

hereinafter called the "Debtor", shall promptly and fully pay any and all indebtedness* which now exists and/or which may hereafter accrue in any manner from said Debtor to said finance company, and in the event the said Debtor fails at any time or times to promptly pay any and all indebtedness which now exists and/or may hereafter accrue from said Debtor to said finance company as the same becomes due, the undersigned and each of them hereby jointly and severally promise to pay any and all such indebtedness as the same becomes due from said Debtor to said finance company, forthwith, upon demand, with all attorney's fees incurred in enforcing payment under this instrument, all without relief from valuation and appraisement laws.

This is a continuing guaranty and by this instrument the Guarantors guarantee the prompt payment of any and all indebtedness which may now exist and/or may hereafter accrue at any time or times from said Debtor to said Finance Company until the Guarantors have delivered to said finance company a notice signed by them of their election not to guaranty any new indebtedness from said Debtor to said finance company which may thereafter accrue, but such notice shall not in any way affect the promise of the Guarantors hereunder to pay any and all indebtedness from said Debtor to said finance company existing at the time such notice is given.

Each of the Guarantors waives all notice of acceptance of this contract by the finance company; all notice of the extension of credit from time to time given by said finance company to said Debtor; and all notice of the amount of the indebtedness of the Debtor to the Finance Company which may exist from time to time, and agree that if any one of the undersigned desires at any time to ascertain the amount of liability accrued under this guaranty, he will make inquiry from said Finance Company.

Each of the Guarantors hereby waives presentment for payment, protest and notice of protest and of non-performance of any note or notes made or hereafter made by the Debtor to said Finance Company or of any other items of indebtedness held or hereafter held by said Finance Company against said Debtor. Each of the Guarantors further waive all rights which he has or may have by statute or otherwise to require the Finance Company to institute suit against said Debtor or to exhaust its rights or remedies against said Debtor, the Guarantors hereunder and each of them being bound to the payment of each and all indebtedness of said Debtor to said Finance Company whether now existing or hereafter accruing, as fully as if such indebtedness was directly owing to said Finance Company by him and as fully as if each Guarantor was a joint maker with the Debtor upon each note made or hereafter made by said Debtor to said Finance Company.

Forbearance on the part of the Finance Company to take steps to enforce the payment of any indebtedness held by it against said Debtor, arising from his default in any respect whatever, or the giving of further time to said Debtor shall in no wise release the Guarantors or any of them, but they and each of them shall remain liable hereunder for the prompt payment of all notes signed by said Debtor and made to said Finance Company and all renewals thereof or substitutions therefor and all other indebtedness which may now exist and/or may hereafter accrue from said Debtor to said Finance Company.

The Finance Company may take from said Debtor any new or additional or substituted security from time to time without in any way impairing the obligation of the Guarantors nor shall the impairment of the security which said Finance Company may from time to time held from said Debtor in any way operate to discharge any of the Guarantors in whole or in part, it being specifically agreed that the Finance Company is not required to exercise diligence to enforce its rights against said Debtor.

Each Guarantor agrees that the balance due and unpaid at any time from said Debtor to said Finance Company, as shown by the books of the Finance Company, if approved as correct by the Debtor, shall be received as conclusive evidence of the amount of such indebtedness owing by said Debtor to the Finance Company as against said Guarantors and shall not be disputed or questioned by the undersigned Guarantors or any of them, and that none of the Guarantors can avail himself of any defense whatever which said Debtor may have against said Finance Company other than the payment of said notes, and other indebtedness. Each of the Guarantors hereby for himself, his heirs, executors and personal representatives waives all defenses given to sureties or guarantors at law or in equity other than the payment of said indebtedness, and the fact that certain of said defenses are hereby expressly mentioned does not mean that other defenses are not also waived, it being expressly agreed that said Finance Company cannot prejudice its rights against said Guarantors or any of them by any act or omission on its part with respect to any indebtedness which may now exist and/or may hereafter accrue from said Debtor to said Finance Company. All remedies or actions for the enforcement by said Finance Company of the payment of such indebtedness are cumulative and the pursuit of one shall not preclude the enforcement of any other rights, or remedies.

The Finance Company may at any time demand payment from the Guarantors of any indebtedness referred to herein which said Debtor has not promptly paid by mailing to each of the Guarantors herein written demand therefor by registered United States Mail addressed to his address as stated hereon and each Guarantor agrees that the sending of such written demand as herein provided shall be a sufficient demand upon him for payment hereunder.

This agreement shall extend to and bind the heirs, executors, administrators and assigns of each Guarantor hereto.

This contract shall inure to the benefit of all transferees, assignees and/or endorsers of said Finance Company of any part or parts or all of the indebtedness herein guaranteed.

In the event this instrument is signed by only one person, then the term "Guarantors" herein shall be considered to be in the singular.

*Including any lease payments due under leases between principal debtor and lessor

IN WITNESS WHEREOF, the said Guarantors have hereunto subscribed their names this......... day of ................................... 19.........

Claude L. Schilling (Witness)

X _Jones R. Buch_____ (Name)

6726 Turnwood Dr., Richfield, WI  53076
Address (street and city)

Claude L. Schilling (Witness)

x _Gerald R. Buchmeier_ (Name)

936 Hwy. K, Hartford, WI  53027
Address (street and city)

Thomas V. Hoffman (Witness)

TRUDELL TRAILERS of Milwaukee

Name

766

## HOWARD, SOLOCHEK & WEBER, S.C.
### Attorneys at Law

Albert Solochek    Andrew N. Herbach
Robert S. Weber    Lynne M. Mueller
Kevin D. Mathews    Jonathan H. Dudley
C. Scott Pryor
David A. Weber

324 EAST WISCONSIN AVENUE
MILWAUKEE, WISCONSIN 53202
TELEPHONE (414) 272-0760
TELECOPIER NUMBERS
(414) 272-7265 / (414) 272-0918

(RETIRED)
Daniel W. Howard
James E. Peterman

June 4, 1992

<u>Via Telefax No. 276-8283</u>
Mr. Robert Waud
Bankruptcy Clinic, S.C.
152 W. Wisconsin Ave., Suite 414
Milwaukee, WI 53203

RE: Trailer Rental Company, Inc.
VS: James R. Buchmeier, et al.
Case No. 92-C-0490

Dear Bob:

We appeared in the United States District Court for the Eastern District of Wisconsin attempting to obtain injunctive relief in the above referenced action. The court was concerned that the trustee had not formally abandoned its interest in the trailers which are the subject of our injunctive relief.

You will recall that this debtor never listed the trailers as part of their collateral since the debtor had abandoned its interest in the trailers prior to the bankruptcy filing.

This letter may be filed with the District Court. We ask that, if you agree that you have no interest in the trailers, that you sign at the bottom of this letter that you have abandoned all interest in the trailers.

If you need any information to come to your conclusion concerning an abandonment, please do not hesitate to contact us.

Very truly yours,

*Jean E. Bogue*

Andrew N. Herbach
Jean M. Bogue

ANH/kaw

I, as trustee in the bankruptcy case of Badger Lines, Inc., claim no interest and abandon all interest in the trailers which are the subject of the above referenced action.

*Robert Waud*
Robert Waud, Trustee