MCFARLAND STATE BANK, Plaintiff-Respondent,†

v.

Ricky A. SHERRY, Jolene C. Sherry, US Bank NA
ND, City of Madison and State of Wisconsin
Department of Workforce Development,
Defendants,

Earl O. SHERRY, Defendant-Appellant.

Court of Appeals

*No. 2010AP2473. Oral argument June 7, 2011.
—Decided December 22, 2011.*

2012 WI App 4

† Petition for Review denied 4/23/12.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Nicholas J. Loniello* of *Loniello, Johnson & Simonini*, Madison. There was oral argument by *Nicholas J. Loniello*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John P. Starkweather* of *Boardman, Suhr, Curry & Field LLP*, Madison. There was oral argument by *John P. Starkweather*.

Before Higginbotham, Sherman and Blanchard, JJ.

¶ 1. BLANCHARD, J. Earl O. Sherry (Sherry) appeals a circuit court order denying his motion for relief from a money judgment against him in favor of McFarland State Bank. The money judgment resulted from Sherry's execution of a personal guaranty making him liable for the indebtedness of his son, Ricky Sherry, and daughter-in-law, Jolene Sherry (the debtors), on a loan by the Bank secured by a mortgage on real property. The debtors defaulted on the mortgage, and the Bank foreclosed on the property. The Bank acquired the property as the successful bidder at a sheriff's sale. Sherry argues that he is entitled to an offset against the money judgment in an amount equal to the fair value of the mortgaged property acquired by the Bank. The Bank disagrees, and further argues that Sherry's appeal is moot because, after Sherry filed this appeal, he paid the judgment in full and in exchange (1) took title to the property and (2) was assigned the Bank's right to a deficiency judgment against the debtors.

¶ 2. We conclude that Sherry's appeal is not moot, and that Sherry should have received an offset equal to the fair value of the property that the Bank acquired at the sheriff's sale, which was confirmed by the court. We therefore reverse the circuit court's order. We remand for the circuit court to exercise its broad equitable

466

powers to grant appropriate relief. Based on the record developed to date, that relief will likely include, but is not necessarily limited to, an order requiring the Bank to make a cash payment to Sherry and requiring Sherry to convey title to the property back to the Bank.

## BACKGROUND

¶ 3. The debtors executed a mortgage and a series of notes on real property in favor of the Bank, beginning in 2003. Contemporaneously with the first note, Sherry executed a personal guaranty for the debt created by the notes.

¶ 4. The debtors defaulted on their mortgage payments, and in January 2009, the Bank filed a foreclosure action naming the debtors and Sherry as defendants. The Bank obtained a judgment of foreclosure for $152,029.83, including interest and other charges and fees. The Bank also obtained the right to a deficiency judgment against the debtors for any remaining deficiency after sale of the property. In addition, the Bank obtained a second judgment solely against Sherry for the same amount, $152,029.93.

¶ 5. At the sheriff's sale, the Bank was the successful bidder, although as lender-creditor, the Bank did not affirmatively pay any funds to acquire full title to and possession of the property.[1] In the order confirming the sale, the circuit court found that the property had a fair value of $147,000, as proposed by the Bank. After confirmation of the sale, Sherry deposited with the clerk of court $17,585.82, an amount that Sherry cal-

---

[1] The Bank refers to this scenario as a "credit bid." The Bank does not dispute that it "paid" for the property in the sense that it was required to offset what the *debtors* owed it by the fair value of the property. What the Bank disputes is whether the offset also applies to Sherry as a guarantor.

culated to equal the Bank's judgment against him, plus additional interest due, but reduced by the $147,000 value of the property.[2] Sherry then moved for relief from the judgment, arguing that it was fully satisfied. The circuit court denied Sherry's motion, and Sherry appealed.

¶ 6. After Sherry filed his appeal, the parties took a series of coordinated actions, not the result of any order or other form of direction from the circuit court or this court, that amounted to an agreement ("exchange agreement"). Under the exchange agreement, Sherry paid the Bank the full amount of the money judgment against him, and the Bank conveyed to Sherry title to the property and assigned to him its right to a deficiency judgment. As part of this agreement, Sherry informed the Bank that he intended to maintain this appeal regardless of the exchange.

¶ 7. The Bank moved this court to dismiss the appeal, arguing that the exchange agreement rendered it moot, because Sherry accepted the property and the assignment of the right to a deficiency judgment. Sherry opposed the motion. This court held the motion in abeyance pending resolution of the appeal, and we take it up now.

## DISCUSSION

¶ 8. We first address the Bank's motion to dismiss Sherry's appeal on grounds of mootness. If any issue in a case is moot, a court ordinarily will not adjudicate

---

[2] So far as we can discern, the Bank does not dispute Sherry's calculations. In other words, the Bank appears to agree that its judgment against Sherry, based on his guaranty, would have been satisfied were it not for the parties' dispute over Sherry's right to a $147,000 offset against that judgment.

that issue.[3] *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425. We conclude for the reasons set forth below that Sherry's appeal is not moot. We then turn to the merits and finally the remedy.

### A. Mootness

¶ 9. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *State ex rel. Treat v. Puckett*, 2002 WI App 58, ¶ 19, 252 Wis. 2d 404, 643 N.W.2d 515. Conversely, a case is not moot when "a decision in [a litigant]'s favor . . . would afford him some relief that he has not already achieved." *Id.* As a general matter, the question of whether a case is moot is a question of law for our de novo review, *State ex rel. Milwaukee County Personnel Review Board v. Clarke*, 2006 WI App 186, ¶ 28, 296 Wis. 2d 210, 723 N.W.2d 141, although of course on this issue we are not reviewing a decision of the circuit court.

¶ 10. The Bank argues that Sherry's appeal is moot because, under the exchange agreement, Sherry obtained all the relief to which he could be entitled, namely, title to the property and discharge of his obligations under the guaranty. In the alternative, the

---

[3] The general rule that courts do not decide moot issues has exceptions, but Sherry does not argue that any of those exceptions apply here. The exceptions include (1) the issue has great public importance, (2) a statute's constitutionality is involved, (3) a decision is needed to guide the circuit courts, or (4) the issue is "likely of repetition and yet evades review" because the situation typically is resolved before completion of the appellate process. *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶ 3, 233 Wis. 2d 685, 608 N.W.2d 425.

Bank argues that the appeal should be dismissed based on two other "principles of mootness." We address each of the Bank's arguments in turn.

### 1. *Nature of the Relief Sherry Seeks*

■

¶ 11. The Bank argues that Sherry obtained all the relief he could receive because, under the exchange agreement, Sherry successfully prevented the Bank from being unjustly enriched by the double recovery of obtaining title to the property and also full satisfaction from Sherry of the debt owed to it. We disagree.

¶ 12. The Bank's argument depends on an imprecise and abstract characterization of the relief Sherry sought, and still seeks. The record and Sherry's arguments make clear that the primary relief Sherry has sought, and continues to seek, is the right to offset the Bank's judgment against him by $147,000. He did not seek title to the property. Sherry's position is that he is out $147,000 in funds, which, he argues, the Bank had no right to receive from him, given its acquisition at the sheriff's sale of title to the property at a fair value of $147,000.

¶ 13. Thus, although Sherry now holds title to the mortgaged property, the primary relief Sherry sought and continues to seek is not the property. He seeks money.[4] There are any number of reasons why a litigant

---

[4] Sherry asserts that he entered into the exchange agreement for a number of reasons, including his concern that the Bank's continued execution of its judgment against him was likely to result in garnishment of his accounts and a negative impact on his credit standing. Sherry also asserts that he was concerned that the Bank might allow the property to deteriorate while possessing it, which could significantly affect his

might reasonably prefer money over real property of equal value, and the law recognizes many forms of relief based on a litigant's preference for one form over another. *See* DAN B. DOBBS, DOBBS LAW OF REMEDIES, § 1.7, at 33 (2d ed. 1993) ("Where all the available remedies are approximately equivalent in effect . . . and none imposes special costs upon the court or the public, the plaintiff's choice of remedy should be respected.") (footnote omitted). This is not merely an academic point because, as we explain later, if Sherry prevails, the circuit court has the equitable authority to undo the parties' exchange agreement and order a cash payment to Sherry.

¶ 14. Accordingly, we conclude that Sherry has not received all of the relief to which he could be entitled.

### 2. Other "Principles of Mootness"

¶ 15. The Bank argues that two other "principles of mootness" support dismissal: "acceptance of the benefits of judgment" and "voluntary acquiescence."

### a. Acceptance of Benefits of Judgment

¶ 16. As the term implies, the "acceptance of the benefits of the judgment" rule "is that an appellant is not permitted to take an appeal when he voluntarily accepts a benefit which is dependent upon that part of the order or judgment which he attacks on appeal." *Stevens Constr. Corp. v. Draper Hall, Inc.*, 73 Wis. 2d 104, 110, 242 N.W.2d 893 (1976). The Bank concedes that the rule does not "precisely fit" the facts here because, to the extent

liability, depending on the outcome of his appeal. The Bank does not suggest that these are not plausible motivations for Sherry to have had in entering into the exchange agreement.

471

that Sherry accepted any benefits, they were not benefits that flowed from the order Sherry attacks on appeal. That order did not require the Bank to transfer the property to Sherry or to assign its right to a deficiency judgment to Sherry. The Bank's arguments in support of application of the rule, despite its imprecise fit, rehashes the Bank's other mootness arguments. For these reasons, we are not persuaded that the rule applies.

### b. Voluntary Acquiescence

¶ 17. As to voluntary acquiescence, the Bank cites 5 AM. JUR. 2D, APPELLATE REVIEW, § 578, for the proposition that a party to a judgment who takes a position consistent with the validity of the judgment may not contest the validity of the judgment on appeal. *See* 5 AM. JUR. 2D, APPELLATE REVIEW, § 578.[5] Putting aside whether Sherry's actions fit this concept, the Bank's argument fails because, as reflected in our footnote 5, the propo-

---

[5] The full passage reads:

A party to a judgment who voluntarily acquiesces in, or recognizes the validity of, such judgment, or who otherwise takes a position which would be inconsistent with any theory other than the validity of the judgment, is said to have implicitly waived the right to contest the validity of the judgment on appeal, or to be procedurally estopped from taking an appeal.

However, compliance with a judgment does not preclude a party from maintaining an appeal, unless it appears that compliance was voluntary, not coerced, and made with the view of settlement. In order for an appellate court to hold that a party has acquiesced in a judgment, it must be shown that the appellant has either assumed burdens or accepted benefits of the judgment contested on appeal. The loss of a party's right to appeal through acquiescence should be decreed only when the party's intention to abandon the right of appeal is clearly demonstrated.

5 AM. JUR. 2D, APPELLATE REVIEW, § 578 (footnotes omitted).

sition is qualified by the following language, which the Bank omits: "The loss of a party's right to appeal through acquiescence should be decreed *only when the party's intention to abandon the right of appeal is clearly demonstrated." Id.* (emphasis added). As noted above, Sherry informed the Bank, at the time the parties entered into the exchange agreement, that he intended to maintain his appeal, explicitly reserving his appeal rights.[6] In this way, Sherry made clear that he did not intend to take a position consistent with the validity of the judgment from which he now appeals.

¶ 18. We conclude for the reasons stated above that Sherry's appeal is not moot. We therefore deny the Bank's motion to dismiss and turn to the merits of Sherry's appeal.

## B. Sherry's Right to an Offset

¶ 19. Sherry argues that he should have received an offset against the Bank's judgment equal to the mortgaged property's fair value, $147,000. Sherry presents theories based on (1) the common law of guaranties, (2) Wis. Stat. § 846.10 (2009–10),[7] and (3) the terms

---

[6] As part of its voluntary acquiescence argument, the Bank makes passing reference to judicial estoppel, but does not develop a separate judicial estoppel argument. We therefore do not address judicial estoppel. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (inadequately briefed and undeveloped arguments need not be addressed on appeal).

[7] For the following reasons, we do not address Sherry's statute-based argument. Wisconsin Stat. § 846.10 relates to the foreclosure process and provides, in part, that "[t]he proceeds of every sale shall be applied to the discharge of the debt adjudged to be due." § 846.10(3). The Bank responds to Sherry's argument based on § 846.10(3) that, after *Bank Mutual v. S.J. Boyer Construction, Inc.*, 2010 WI 74, 326 Wis. 2d 521, 785 N.W.2d 462, § 846.10(3) cannot be applied to affect the liability of

473

in his guaranty, each of which he asserts entitles him to the $147,000 offset.

¶ 20. In the circuit court, Sherry sought relief from the judgment on the grounds that the judgment was satisfied, released, or discharged under WIS. STAT. § 806.07(1)(e).[8] The circuit court's decision to grant or deny relief under § 806.07(1) is discretionary. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541–42, 363 N.W.2d 419 (1985). However, when a discretionary decision is based on questions of law, we review those questions de novo. *Town of Grand Chute v. Outagamie Cnty.*, 2004 WI App 35, ¶ 7, 269 Wis. 2d 657, 676 N.W.2d 540. As discussed below, the question of whether

---

guarantors. The circuit court agreed with the Bank on this point. The circuit court's decision did not make clear why the court implicitly rejected Sherry's common law argument. We need not address the parties' dispute regarding the applicability of § 846.10 after *Bank Mutual*, given our conclusion below that the common law bar to over-recovery resolves the issues presented in this appeal. All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[8] The parties agree that Sherry's motion for relief from judgment was permissible under WIS. STAT. § 806.07(1)(e), which provides as follows:

> **(1)** On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> . . . .
>
> (e) The judgment has been satisfied, released or discharged[.]

Sherry has abandoned his argument that his motion was also proper under § 806.07(1)(g), which requires that "[i]t is no longer equitable that the judgment should have prospective application[.]"

Sherry should have received an offset involves the application of legal standards or contract terms to undisputed facts. Accordingly, we decide the question de novo. *See Price v. Hart*, 166 Wis. 2d 182, 193, 480 N.W.2d 249 (Ct. App. 1991) (legal standards); *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990) (contract terms).

¶ 21. We focus on Sherry's common law argument, and for the following reasons conclude that it is persuasive. In particular, Sherry calls our attention to the common law rule that a creditor is not allowed a total recovery, including any recovery from a guarantor, that is more than the total debt that is due. This common law bar to over-recovery is summarized in *Continental Bank & Trust Co. v. Akwa*, 58 Wis. 2d 376, 206 N.W.2d 174 (1973):

> [T]he guarantor will be discharged when the principal pays the debt or performs the undertaking. *The creditor is entitled to but one performance,* and if he receives that, *by payment or other satisfaction,* the surety is discharged.
>
> However, the duty of the principal must be fully satisfied and, if the principal only partially performs, a surety's obligation continues, *although the amount which the creditor can recover from the surety is reduced by what he has received from the principal.*

*Id.* at 388–89 (emphasis added) (footnote omitted); *see also First Wisconsin Nat'l Bank of Oshkosh v. Kramer,* 74 Wis. 2d 207, 216, 246 N.W.2d 536 (1976) ("it is clear that the bank is not entitled to recover more than it was owed"); *Bank of Sun Prairie v. Marshall Dev . Co.,* 2001 WI App 64, ¶ 30, 242 Wis. 2d 355, 626 N.W.2d 319 ("In no event will the Bank recover more than the amount previously found to be due on the note.").

¶ 22. We conclude that, under this common law bar to over-recovery, the amount that the Bank can recover from Sherry should have been "reduced by what [it] has received from the [debtors]," namely the value of the mortgaged property to which it took title. *See Continental Bank & Trust*, 58 Wis. 2d at 389. Expressed in the terms used in *Continental Bank & Trust*, when the Bank took title to the property, it received "by other satisfaction" part of the performance that Sherry promised in the guaranty contract, thus discharging his surety by the amount of value thereby acquired by the Bank. This created the offset Sherry sought. We discern no reason why the common law bar should not apply, and the Bank's arguments to the contrary, discussed below, are not persuasive.

¶ 23. Before addressing the Bank's arguments, we pause to note that at oral argument before this court the Bank's main arguments changed in some respects, both from what it submitted in its briefs on appeal and over the course of oral argument. We make every effort to address what we understand to be the positions that the Bank ultimately chose to take.

¶ 24. Initially the Bank relied heavily on *Bank Mutual v. S.J. Boyer Construction, Inc.*, 2010 WI 74, 326 Wis. 2d 521, 785 N.W.2d 462. There, the court explained that "Wisconsin law treats the liability of a guarantor as separate and distinct from the liability of the borrower, arising not from the debt itself but from the terms of the guaranty contract." *Id.*, ¶ 54. However, by the conclusion of oral argument, it became clear that the Bank conceded that neither the "separate and distinct" concept stated in *Bank Mutual*, nor the terms of Sherry's guaranty, dictate a decision in the Bank's favor.[9]

_____

[9] It is undisputed that, under this "separate and distinct"

¶ 25. More specifically, as to the "separate and distinct" concept, the Bank conceded at oral argument that, if the debtors paid the Bank the amount of the outstanding debt, as opposed to having defaulted and forced the Bank to foreclose on the property, Sherry would have been entitled to an offset in that amount. Similarly, the Bank asserted that, if the Bank sold the property, Sherry would be entitled to an offset in the amount of the proceeds. Thus, the Bank's own positions effectively show that the "separate and distinct" nature of the guarantor's liability is not a reason to allow the Bank to over-recover. Likewise, we see nothing about the "separate and distinct" nature of the guarantor's liability that is inconsistent with application of the long-standing common law bar against over-recovery. The "separate and distinct" concept is not new. *See Bank Mutual*, 326 Wis. 521, ¶ 55 n.12 (citing *Klatte v. Franklin State Bank*, 211 Wis. 613, 623, 248 N.W. 158 (1933), for "separate and distinct" concept).

¶ 26. As to the terms of the guaranty, the Bank at oral argument abandoned its contention that the terms dictate that Sherry is not entitled to the offset, ultimately conceding that the terms are "silent" on that question. The Bank's concession in any case appears appropriate. Although the guaranty contains some provisions that, considered in isolation, might support the Bank's initial position, when read together the terms do not unambiguously preclude the offset Sherry seeks.[10]

concept and the terms of Sherry's guaranty, the Bank could have pursued Sherry exclusively and was not obligated to proceed with the foreclosure process. However, the Bank chose the foreclosure route, and took the benefit of the sale of the property.

[10] The following are details supporting the Bank's ultimate concession. The Bank in its briefing relied primarily on para-

¶ 27. Rather, the Bank's central argument is that Sherry is not entitled to a $147,000 offset because, in the Bank's view, the Bank has not recovered anything unless and until it recovers *money*. In the Bank's view, it recovers on the money judgment only when it receives the full amount of the judgment in the form of cash. This, despite the fact that it did not affirmatively pay any funds to acquire the property at the sheriff's sale. We reject this view because it negates the circuit court's finding, in the order confirming the sheriff's sale, that the property has a fair value of $147,000. Under the Bank's argument, the property has *no* monetary value, or at best some unknown contingent value dependent on the Bank's resale of the property.

¶ 28. We recognize that there are good reasons why the Bank, like Sherry, may prefer to recover money instead of property of equal value. We have acknowledged as much in our discussion of mootness above. However, while the preference for a monetary remedy is a real and practical one that is sufficient to avoid

graph 6(i) of the guaranty, which provides that "[t]he liability of the [guarantor] shall not be affected or impaired by . . . any acceptance of collateral security." However, Sherry points to a another term in paragraph 7 of the guaranty, which provides that "the [guarantor] shall be and will remain liable for any deficiency, if allowed by Wisc. Stat. § 425.209, remaining after foreclosure of any mortgage or security interest securing Indebtedness." We agree with Sherry that paragraph 7 implies a corollary that the guarantor remains liable for no more than the deficiency. Thus, when read together, the terms do not unambiguously preclude the offset Sherry seeks. In addition, we note that paragraph 1 of the guaranty provides that "full payment and discharge of all indebtedness" releases the guarantor from liability. However, seemingly at odds with this, paragraph 2 states that the guaranty continues to bind the guarantor "whether or not all Indebtedness is paid in full."

478

mootness, that preference does not mean that the Bank did not recover property valued at $147,000 through the foreclosure action. The Bank decided to submit a bid and ultimately took title to the property, and it cannot thereafter deny the significance of that fact to the calculation of the total debt at issue. Stated another way, having decided to take title to the property by acquiring it at a sheriff's sale, and having affirmatively paid no funds for the property, the Bank cannot now claim that it is proceeding against Sherry as though it did not also proceed against the debtors in foreclosure. The Bank cannot now obtain relief based on the false premise that it has proceeded against Sherry alone as its exclusive remedy to recover on the debt.

¶ 29. The Bank also argues that the $147,000 fair value finding should not be determinative of the offset, if any, that Sherry should receive. For its argument on this point, the Bank submits that, under *Crown Life Insurance Company v. LaBonte*, 111 Wis. 2d 26, 330 N.W.2d 201 (1983), the circuit court could find a different value of the property, perhaps relying on additional evidence, for purposes of determining what Sherry's offset should be. We disagree that this authority stands for the proposition cited.

¶ 30. In *Crown Life*, the trial court calculated a guarantor's liability based on a property value different from the price for which the property originally sold at a sheriff's sale. *See id.* at 31. However, we do not view *Crown Life* as establishing this approach as a proper one to apply here, because the trial court's use of that approach was not at issue before the supreme court in *Crown Life*. Moreover, the guarantor in *Crown Life*, unlike Sherry, was not a party to the foreclosure proceedings. *See id.* at 30–31. And, the value of the property that the court used to calculate the guarantor's liability in

*Crown Life* was *more than* the winning bid at the sheriff's sale, thus *reducing* the guarantor's liability from what it would have been if the guarantor were bound by the proceeding to which he was not a party. *See id.* at 31–32. Thus, even if this aspect of the trial court's approach in *Crown Life* made sense in that context (a fact not commented on by the supreme court), it does not make sense here.

¶ 31. For the reasons stated, we conclude that, under the common law bar to over-recovery, Sherry should have received the relief he seeks, a $147,000 offset on the Bank's judgment against him.

## C. Remedy

■■■■■

¶ 32. Having concluded that Sherry should have received the offset he seeks, we turn to the proper remedy on remand. No doubt, granting Sherry the relief he seeks at this juncture is complicated by the parties' exchange agreement under which Sherry now owns the property. However, the circuit court's equitable powers are sufficiently broad to fashion a proper remedy:

> Foreclosure proceedings are equitable in nature, and the circuit court has the equitable authority to exercise discretion throughout the proceedings. This discretion extends even after confirmation of sale, if necessary to provide " 'that no injustice shall be done to any of the parties.' " A circuit court has the "authority to grant equitable relief, even in the absence of a statutory right." Moreover, a circuit court's equitable authority may not be limited absent a "clear and valid" legislative command.

*GMAC Mortg. Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998) (citations omitted); *see also*

*American Med. Servs. Inc. v. Mutual Fed. Sav. & Loan Ass'n*, 52 Wis. 2d 198, 205, 188 N.W.2d 529 (1971) ("The court of equity has always had a traditional power to adapt its remedies to the exigencies and the needs of the case; that was one of the great virtues and reasons for the existence of courts of equity." (footnote omitted)).

¶ 33. Given the circuit court's broad equitable powers, the relief the court grants Sherry may include, but need not necessarily be limited to, an order requiring that the Bank make a cash payment to Sherry and that Sherry convey the property to the Bank, in order to prevent the over-recovery described above. Sherry has averred that he stands ready to convey title to the property back to the Bank, and to account for any of his expenditures on it.

¶ 34. The Bank points to no statute or other authority that would prevent the circuit court from fashioning an equitable remedy that includes, in effect, an order that the parties undo their exchange. The Bank expresses concern that it has no warranty as to the current condition of the property that it elected to acquire in February 2010, but the Bank supplies no reason why that concern cannot be addressed as part of whatever relief the court orders on remand, with suggestions from the parties as to any practical obstacles either might face under any proposed scenario aimed at avoiding over-recovery by the Bank.

¶ 35. In short, given the posture of this case, we conclude that the law directs that the circuit court on remand exercise its broad equitable authority to fashion a remedy that ensures that Sherry receives the $147,000 offset to which he is entitled, while also ensuring that the Bank's rights are protected and that neither party is unjustly enriched because of any change in circumstances.

481

## CONCLUSION

¶ 36. For the reasons stated, we reverse the circuit court's order denying Sherry's motion for relief from judgment and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.