PATIENCE DRAKE ROGGENSACK, J.
¶ 70. (concurring). I write separately to point out two fundamental principles: (1) the rights and obligations of guarantors are established by the guaranty contract, under which the guarantor and the creditor for whose benefit the guaranty was given operate; and (2) the majority opinion affirms that only a shareholder or beneficial owner has standing to bring a derivative claim under Wisconsin corporate law.[1]
¶ 71. I agree with the majority opinion that all counterclaims and affirmative defenses raised herein, except one, are derivative and therefore, they cannot be brought in this action. However, because in some of its discussion, the majority opinion could be read erroneously to equate shareholders' rights and obligations with those of guarantors, I do not join the majority opinion, but respectfully concur.
*438 I BACKGROUND
¶ 72. Park Bank's claims in this action against Roger Westburg and Sandra Westburg (hereinafter, the Westburgs) are based on the continuing guaranties the Westburgs signed on January 28, 2005, for the business loans that Park Bank made to Zaddo, Inc. and Zaddo Holdings.[2] The terms of the two guaranties are identical, with the exception of the named debtors.
¶ 73. The Westburgs defend against Park Bank's enforcement of the guaranties by affirmative defenses and counterclaims. With one exception, the affirmative defenses and counterclaims alleged are derivative of underlying injuries to a corporation, which only the corporation or a person who has statutory standing may raise.[3] See Rose v. Schantz, 56 Wis. 2d 222, 229, 201 N.W.2d 593 (1972). Although the Westburgs are shareholders who may have had standing to bring derivative claims, they did not follow the statutory requirements to do so; therefore, they cannot raise them in this lawsuit.[4] See Read v. Read, 205 Wis. 2d 558, 565, 556 N.W.2d 768 (Ct. App. 1996) (explaining *439 that in order to have standing to bring a derivative claim, a litigant must meet the test set out in Wis. Stat. § 180.0741).
¶ 74. The one claim for which the Westburgs allege direct injury to them is Park Bank's freezing their personal money-market account on August 30, 2006.[5] That claim is based on the Westburgs' assertion that the funds in their personal money-market account were not subject to any security or credit agreement.[6] They allege that freezing that account damaged them because it was their sole source of funds for living expenses, as they were not drawing a salary from Zaddo. The Westburgs alleged that access to their personal account was denied until they agreed to place Zaddo, Inc. into a ch. 128 receivership. On September 7, 2006, the Westburgs placed Zaddo, Inc. into receivership.
II. DISCUSSION
A. Standard of Review
¶ 75. Whether the facts alleged in a complaint state a claim for relief that is based on an injury that is primarily to a corporation or whether the claimed *440 injury is primarily a direct injury to another person are questions of law that we review independently. Borne v. Gonstead Advanced Techniques, Inc., 2003 WI App 135, ¶ 10, 266 Wis. 2d 253, 677 N.W.2d 709. The scope of a guarantor's liability under a written guaranty contract presents a question of law also subject to our independent review. See Cont'l Bank & Trust Co. v. Akwa, 58 Wis. 2d 376, 388, 206 N.W.2d 174 (1973).
B. The Westburgs' Claims
¶ 76. When an act that is alleged to have caused injury to a corporation is alleged also to have caused an injury to another person, we must determine whether the alleged injury to the other person is direct or merely derivative of the injury to the corporation. Rose, 56 Wis. 2d at 229. "Where the injury to the corporation is the primary injury, and any injury to stockholders secondary, it is the derivative action alone that can be brought and maintained." Id. Stated otherwise, to raise a direct claim of injury, the right sought to be enforced must be that of the person seeking to enforce it and not dependent on a right of a corporation. Id.
¶ 77. There are occasions where the separate right of a corporation and the separate right of another person are both wrongfully affected by one act. See Harpole Architects, P.C. v. Barlow, 668 F. Supp. 2d 68, 77-78 (D.C. 2009) (explaining that where conversion by former bookkeeper was an injury to the corporation, bookkeeper's misrepresentation, which was made to hide the conversion of corporate funds, caused a separate injury to Harpole). Claims raised as affirmative defenses are subject to the same analysis of whether the defense belongs primarily to the corporation or is based on a separate and distinct right of the person who is asserting it.
*441 ¶ 78. In the case at hand, I agree with the majority opinion that the only right to which injury is claimed that does not depend on an underlying injury to a corporation is the temporary freezing of the Westburgs' personal money-market account by Park Bank.[7]
C. Guaranty Principles
¶ 79. The rights and obligations of a guarantor are separate and distinct from those of the debtor, as the guarantor's obligations arise from the terms of the guaranty contract. Bank Mut. v. S.J. Boyer Constr., Inc., 326 Wis. 2d 521, ¶ 54, 326 Wis. 2d 521, 785 N.W.2d 462 (explaining that a guarantor's rights and obligations are set by contract). One may guarantee the debts of an individual, as well as the debts of a corporation. The legal principles that apply to a guarantor's rights and obligations are based on the terms of the guaranty contract, not on the nature of the debtor. See McFarland State Bank v. Sherry, 2012 WI App 4, ¶ 1, 338 Wis. 2d 462, 809 N.W.2d 58.
¶ 80. Under the facts of this case, the Westburgs' obligations under the guaranty contract do not involve consideration of their status as shareholders.[8] Rather, in this action, it is the terms of the guaranty contract upon which the validity of Park Bank's actions and the Westburgs' counterclaims depend. Bank Mut., 326 Wis. 2d 521, ¶ 54.
*442 ¶ 81. The guaranty the Westburgs signed is a guaranty of payment.[9] Under a guaranty of payment, when the debtor is in default, the creditor is entitled to enforce collection from the guarantor without first seeking collection from other sources. Bank of Sun Prairie v. Opstein, 86 Wis. 2d 669, 677-78, 273 N.W.2d 279 (1979). Stated otherwise, a guaranty of payment is a primary, not a collateral, promise to pay when the debtor defaults. Id. at 678. No efforts to collect on other security are necessary before a creditor may enforce a guaranty of payment against a guarantor. First Wis. Nat'l Bank of Oshkosh v. Kramer, 74 Wis. 2d 207, 212, 246 N.W.2d 536 (1976).
¶ 82. However, a creditor is not permitted to recover from a guarantor for more than the total debt due. Cont'l Bank, 58 Wis. 2d at 389. Therefore, a guarantor of payment is entitled to an offset from the debt owed by the debtor for the amount that the creditor has obtained from other sources. See McFarland State Bank, 338 Wis. 2d 462, ¶ 31.
¶ 83. The majority opinion imprecisely states the law when it combines principles for determining who may bring a derivative claim with the rights and obligations of a guarantor. For example, it posits that "Whether a guarantor may raise derivative claims individually in an action seeking payment under a guaranty is a question not previously addressed by Wisconsin courts."[10] However, our decisions, as well as Wisconsin Statutes, specifically provide that only a shareholder or a beneficial owner has standing to bring a derivative claim. Krier v. Vilione, 2009 WI 45, ¶ 29, 317 Wis. 2d *443 288, 766 N.W.2d 517 (explaining that Krier could not sue on behalf of EOG Environmental because Krier was not a shareholder and therefore, "lacks standing" to bring a derivative suit); Borne, 266 Wis. 2d 253, ¶ 15 (stating that "[t]he failure to plead that one was a registered shareholder requires the dismissal of derivative claims"); Shelstad v. Cook, 77 Wis. 2d 547, 554, 253 N.W.2d 517 (1977) (explaining that "[p]laintiffs special relation to the corporation as a stockholder is intrinsic to the very nature of the [derivative claim] and thus a prerequisite to plaintiffs standing to pursue it"); see also Wis. Stat. § 180.0741.
¶ 84. Furthermore, when one is either a shareholder or a beneficial owner, a derivative claim may be brought only when the specific requirements set out in the statutes have been met. Read, 205 Wis. 2d at 565; see also Wis. Stat. §§ 180.0741-.0744 (setting out those requirements). Stated otherwise, unless a person or entity has the status of shareholder or beneficial owner, Wisconsin case law and statutes preclude standing to bring derivative claims. Krier, 317 Wis. 2d 288, ¶¶ 18, 29; Borne, 266 Wis. 2d 253, ¶ 15; Read, 205 Wis. 2d at 565; Shelstad, 77 Wis. 2d at 554; § 180.0741.
¶ 85. The majority opinion's use of Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi. (Mid-State II), 877 F.2d 1333 (7th Cir. 1989), is interesting and merits comment for a number of reasons. First, in Mid-State II, the corporation that was alleged to have suffered injury from Exchange National Bank's actions was a plaintiff and therefore, it proceeded on seven counts alleging injury to itself. Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi. (Mid-State I), 693 F.Supp. 666, 669 (N.D. Ill. 1988). Second, the non-corporate plaintiffs, Lasley and Maxine Kimmel, sued as both shareholders and as guarantors. Id. at 668. Third, the standing *444 question in Mid-State II turned on federal statutes that comprise the Bank Holding Company Act (BHCA) and the Racketeer Influenced Corrupt Organizations Act (RICO), which accorded standing to "[a]ny person who is injured in his business or property by reason of anything forbidden [under the acts]." Mid-State II, 877 F.2d at 1334-35 (citing 12 U.S.C § 1975 and 18 U.S.C § 1964(c)).[11]
¶ 86. Only direct injuries are sufficient to afford standing to sue under BHCA or RICO. Id. at 1335. Accordingly, the Kimmels were required to show a direct injury; a derivative injury was insufficient to establish federal standing to bring a claim under either BHCA or RICO. Id.
¶ 87. Therefore, the question presented in Mid-State II was not whether a guarantor could bring a derivative claim. Rather, the question presented in Mid-State II was whether the Kimmels had pled a direct or a derivative injury. Id. at 1335. The court reasoned that shareholders' and guarantors' injuries were derivative because "[s]uits by shareholders, guarantors, and the like may well be efforts to divert the debtor's assets — to pay off one set of creditors (here, the Kimmels) while keeping the proceeds out of the hands of the firm's other creditors." Id. at 1336. Accordingly, because the court concluded that the Kimmels pled only derivative injury, they did not have standing to proceed on their federal claims. Id.
*445 ¶ 88. The reasoning in Mid-State II supports a guarantor's standing to proceed on a federal claim under BHCA or RICO if the guarantor can show a direct, rather than a derivative injury. Id. at 1336 ("Guarantors must be treated as creditors. When they suffer direct injury — injury independent of the firm's fate — they may pursue their own remedies"). Likewise in Wisconsin, if a guarantor has a direct injury, the guarantor owns the claim and may proceed on it.[12] However, Mid-State II has nothing to do with whether a guarantor has standing to bring a derivative claim grounded in Wisconsin law.
¶ 89. Wisconsin Statutes limit standing to bring derivative claims to shareholders and beneficial owners. Krier, 317 Wis. 2d 288, ¶ 29 (explaining that standing to sue based on a corporate injury requires one to be a shareholder); Borne, 266 Wis. 2d 253, ¶ 15 (same); Shelstad, 77 Wis. 2d at 554 (same); see also Wis. Stat. § 180.0741. A guarantor cannot bring a derivative claim under Wisconsin law if his sole status is that of a guarantor. Krier, 317 Wis. 2d 288, ¶¶ 18, 29; Borne, 266 Wis. 2d 253, ¶ 15; Read, 205 Wis. 2d at 565; Shelstad, 77 Wis. 2d at 554; see also Wis. Stat. §§ 180.0741-.0744.
¶ 90. In Wisconsin, a guarantor's rights and obligations are controlled by the guaranty contract. See Bank Mut., 326 Wis. 2d 521, ¶ 54. On the other hand, a shareholder's rights are established by the articles of incorporation, the corporate by-laws and the Wisconsin Statutes. A guarantor cannot bring a derivative claim, unless the guarantor is also a shareholder or a beneficial owner. However, it is the status as a shareholder or *446 beneficial owner that is necessary to bringing a derivative claim; being a guarantor is never a sufficient status to bring a derivative claim.
¶ 91. The majority opinion cites Labovitz v. Washington Times Corp., 172 F.3d 897 (D.C. Cir. 1999), as supporting its contention that "Mid-State presented persuasive authority for determining whether guarantors have standing to raise derivative claims."[13] Standing alone, the above quotation from the majority opinion could cause confusion because it could be read to imply that there are occasions when having the status of a guarantor is sufficient to bring a derivative claim on behalf of a corporation. However, as Mid-State II clearly explains, a guarantor needs a direct injury to sue under either BHCA or RICO. Stated otherwise, even under the federal law considered in Mid-State II, the Kimmels, as guarantors, did not have standing to bring a derivative claim. Mid-State II, 877 F.2d at 1335. Accordingly, any concern that the quoted language from the majority opinion may be misinterpreted is quelled because the majority opinion repeatedly concludes that a guarantor cannot bring a derivative claim in Wisconsin. The majority opinion explains "[b]ecause each is derivative, the Westburgs have no standing to raise them given that they appear in this action as guarantors."[14] I agree with the majority opinion's conclusion that the status of a guarantor is insufficient to bring a derivative claim in Wisconsin.
D. The Westburgs' Direct Counterclaim
¶ 92. Park Bank asserts it had the right to freeze the Westburgs' money-market account under the continuing guaranty; the Westburgs allege Park Bank did *447 not have that right. Both the claim and the defense are founded on the guaranty contract signed by the West-burgs on January 28, 2005.
¶ 93. Park Bank's rights under the guaranty contract are very broad. First, the guaranty gives particularized notice to the Westburgs that it is a continuing guaranty that includes debt in existence on January 28, 2005, when the guaranty was signed, as well as debt that accrues subsequently. The guaranty provides:
You are being asked to guarantee the past, present and future Obligations of Debtor. If Debtor does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Debtor or another guarantor.
Second, the guaranty specifically granted Park Bank rights in regard to the personal money-market account that was frozen from August 30, 2006 to September 7, 2006. In this regard, the guaranty provides:
Guarantor grants to Lender a security interest and lien in any deposit account Guarantor may at any time have with Lender. Lender may, at any time after the occurrence of an event of default and notice and opportunity to cure, if required by § 425.105, Wis. Stats.,[15] set-off any amount unpaid on the Obligations against any deposit balances Guarantor may at any time have with Lender, or other money now or hereafter owed Guarantor by Lender.... This Guaranty is valid and en *448 forceable against Guarantor even though any Obligation is invalid or unenforceable against any Debtor.
¶ 94. Third, it appears that Park Bank could have taken the entire money-market account if Zaddo, Inc. or Zaddo Holdings were in default of their obligations under the loan documents, rather than simply preventing access to the account as was done from August 30, 2006 until September 7, 2006. However, on the documents presented in this review, it is not possible for me to determine whether a default existed on August 30, 2006.[16]
¶ 95. It also is not possible to determine what damages the Westburgs sustained during the period of time when they did not have access to their personal account, as they do not particularize the damages that they allege arose from Park Bank's freezing their account for this period of time. Rather, all of the damages they list on the document entitled "Defendant's Counterclaimed Damages" rest upon an underlying injury to the corporation. See Appendix of Appellants-Petitioners, pp. 101-02. Those damages are derivative of the corpora *449 tions' injuries and may not be brought here, as I have explained above.
¶ 96. Because the Westburgs identify no damages that resulted from the temporary freeze of their personal account, I agree with the majority opinion that without a particularized statement of those damages, the Westburgs have not made a showing sufficient to overturn summary judgment dismissing the Westburgs' direct counterclaim.[17]
III. CONCLUSION
¶ 97. In conclusion, I write separately to point out two fundamental principles: (1) the rights and obliga-
tions of guarantors are established by the guaranty contract, under which the guarantor and the creditor for whose benefit the guaranty was given operate; and (2) the majority opinion affirms that only a shareholder or beneficial owner has standing to bring a derivative claim in Wisconsin.[18]
¶ 98. I agree with the majority opinion that all counterclaims and affirmative defenses raised herein, except one, are derivative and therefore, they cannot be brought in this action. However, because in some of its discussion, the majority opinion could be read erroneously to equate shareholders' rights and obligations with those of guarantors, I do not join the majority opinion, but respectfully concur.
¶ 99. I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this concurrence.

 Litigation arising from these business loans has occurred in a Wis. Stat. ch. 128 receivership, in which the assets of Zaddo, Inc. were liquidated, and a foreclosure action, in which the assets of Zaddo Holdings were sold.

 Wisconsin Stat. § 180.0741 provides that a "shareholder or beneficial owner" may have standing to bring derivative claims of damage to a corporation, and then only if the shareholder or beneficial owner meets certain statutory requirements. Wisconsin Stat. § 180.0740(1) defines "beneficial owner" as "a person whose shares are held in a voting trust or held by a nominee on the person's behalf."

 Wisconsin Stat. § 180.0741 through Wis. Stat. § 180.0744 set out requirements that must be met in order to bring a derivative claim. See Read v. Read, 205 Wis. 2d 558, 565, 556 N.W.2d 768 (Ct. App. 1996). The Westburgs did not meet those *439 statutory requirements and therefore, they cannot raise counterclaims or affirmative defenses that rest on injury to the corporations.

 The Westburgs allege that their money-market account was frozen "prior to" August 15, 2006. See Counterclaims, ¶ 34. Park Bank denies this allegation, but admits that it did freeze the account on August 30, 2006. See Reply to Counterclaims, ¶¶ 34, 38. I have chosen to use the August 30 date because there is agreement that the Westburgs were denied access to their money-market account on August 30, 2006.

 Counterclaim, ¶ 48.a.

 Majority op., ¶¶ 54-55.

 The significant legal question that escapes review under the facts of this case is: whether the Westburgs could have relied on a judgment from a successful derivative claim as a defense to Park Bank's claims under the guaranty contracts. Because the Westburgs did not follow the statutory requirements for bringing a derivative claim, we cannot address this question.

 The majority opinion also concludes that the guaranty the Westburgs signed is a guaranty of payment. Majority op., ¶ 58.

 Majority op., ¶ 45.

 The plaintiffs' principal grievances were controlled by Illinois law. Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi. (Mid-State II), 877 F.2d 1333, 1334 (7th Cir. 1989). The court addressed the standing question to determine whether there was federal jurisdiction for the pendent state law claims. Id. at 1334-35.

 The Westburgs raise a direct claim against Park Bank in regard to freezing their personal money-market account.

 Majority op., ¶ 49.

 Majority op., ¶ 3.

 Wisconsin Stat. § 425.105 addresses a merchant's obligation to give notice of default and a right to cure to consumers in consumer credit transactions. The Westburgs do not argue to us that Park Bank is a "merchant" in regard to the continuing guaranty, that the guaranty involved a "consumer credit transaction," or that notice of default is required under law. Accordingly, I do not address § 425.105 further.

 The majority opinion is unclear when it says that Park Bank made the required showing for summary judgment, and then links that statement to: "The Westburgs do not challenge that Zaddo became the subject of an insolvency proceeding when it petitioned for a receivership." Majority op., ¶ 65. First, the receivership is the insolvency proceeding. Second, the Westburgs do point out that the receivership was filed on September 7, 2006, but their personal account was frozen no later than August 30, 2006. Therefore, in regard to the freezing of their money-market account based on the allegation that Zaddo, Inc. was in default, the Westburgs do allege Zaddo was not in an insolvency proceeding when Park Bank froze their personal account. Accordingly, payment of the obligations that the Westburgs guaranteed could not be based on Zaddo's filing an insolvency proceeding, which filing would have been a default causing the guaranty to be available to Park Bank.

 Majority op., ¶ 55 & n.12.

 Majority op., ¶¶ 3, 67.