COURT OF APPEALS
DECISION
DATED AND FILED

December 27, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10
and RULE 809.62.

Appeal No.    **2018AP1693**

Cir. Ct. No.  **2016CV8057**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

CITY OF MILWAUKEE,

PLAINTIFF-RESPONDENT,

V.

MOHAMMAD A. CHOUDRY, PAK RENTALS & CONSTRUCTION LLC, PAK
PROPERTY 1 LLC, PAK PROPERTY 2 LLC AND PAK PROPERTY 3 LLC,

DEFENDANTS-APPELLANTS,

SETH DIZARD,

RECEIVER-TRUSTEE-INTERVENOR-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County:
WILLIAM SOSNAY, Judge. *Reversed and cause remanded with directions.*

Before Brash, P.J., Dugan and Donald, JJ.

¶1　BRASH, P.J.　Mohammad A. Choudry, together with his companies PAK Rentals & Construction LLC; PAK Property 1 LLC; PAK Property 2 LLC; and PAK Property 3 LLC (collectively "Choudry"), appeal from an order of the trial court dismissing the action after real estate owned by Choudry was transferred into an irrevocable trust.　The action was filed by the City of Milwaukee in October 2016 seeking to recover delinquent real estate taxes on numerous properties owned by Choudry.　The City's complaint also alleged that there were thousands of code violations that had been assessed against the properties, constituting a public nuisance.　The complaint listed several other causes of action as well.

¶2　The trial court granted a temporary restraining order in November 2016 to manage Choudry's properties and bar Choudry from acquiring more property.　Also at that time, the court appointed a receiver to manage the properties, with whom Choudry cooperated in making repairs on the properties. However, after performing these duties for approximately one and one-half years, the receiver filed a motion to transfer the properties into a trust, with the receiver as the trustee, asserting that this would allow the receiver to continue managing the properties without the court's involvement until such time that all of Choudry's debts were repaid; at that point, the remaining assets in the trust would be returned to Choudry.　The court granted the motion in July 2018, and the City then dismissed the action against Choudry.

¶3　On appeal, Choudry argues that there was never any final adjudication regarding the causes of action in the complaint, and without that final adjudication the trial court did not have the authority to impose a remedy.　We agree.　We therefore reverse the order of the trial court and remand this matter for further proceedings consistent with this decision.

BACKGROUND

¶4 The City alleged that since 2002, Choudry had acquired ninety-three properties located in the city. The properties were purchased under Choudry's name individually and under the business entities listed above. Additionally, this list of properties included eleven properties for which the City alleged Choudry was the actual owner of equitable title, even though they were acquired at sheriff's sales under the name Usman Akhtar. Furthermore, the City alleged that Choudry had purchased eleven other properties using fictitious entities. Moreover, the City asserted that Choudry failed to record with the Milwaukee County Register of Deeds many of the sheriff's deeds for the properties it acquired, thereby providing no official record of ownership.

¶5 Specifically, the complaint listed six causes of action. In the first cause of action, the City sought a declaration of interest in real property with regard to the eleven properties that were acquired by Akhtar. The City alleged that Choudry had paid for the properties—not Akhtar—noting that Choudry had retrieved several of the unrecorded sheriff's deeds for those properties from the Milwaukee County Clerk of Courts' office, and that the return addresses listed on those deeds was Choudry's address.

¶6 The second cause of action sought personal liability for delinquent taxes on thirty-eight of the properties that were subject to tax foreclosure[1] and *in*

---

[1] The City further noted in its complaint that it had already foreclosed on nineteen of Choudry's properties, costing the City over $400,000 in uncollected delinquent real estate taxes. Moreover, Choudry had sold seven of the properties listed in the complaint to private parties, receiving $282,300 in consideration.

*personam* judgment at the time of filing. The total tax delinquency for those properties, including interest and penalty, was over $400,000.

¶7    The third cause of action was for public nuisance. The City had issued almost 700 orders to correct nearly 3000 code violations on the properties. The fines assessed against Choudry for these violations totaled more than $240,000. The City cited Choudry's "repeated and ongoing failure to correct violations," which caused the properties to deteriorate into public nuisances.

¶8    The fourth cause of action was that Choudry had violated the Wisconsin Organized Crime Control Act because his business practices relating to the ownership and management of these properties demonstrated a "pattern of racketeering activity[.]" Allegations under this cause of action include that Mohammad Choudry listed his wife as the registered agent with an office in Wisconsin for two of his limited liability companies, when she actually lived in Arizona; that Choudry acquired a property at a sheriff's sale under an entity other than one of those entities noted above, without that entity's authorization or consent; that Choudry acquired properties using fictitious entities; and that Choudry intentionally refused to record sheriff's deeds with the Register of Deeds to conceal the ownership of properties for purposes of "defraud[ing] the City by misdirecting and undermining its tax collection and code enforcement efforts." As a result of these actions, the City alleged that it had suffered a direct loss of over $426,000 in uncollected taxes.

¶9    The fifth cause of action was that Choudry's actions surrounding its property acquisitions were fraudulent pursuant to the Uniform Fraudulent Transfer

4

Act, due to Choudry's intent to "hinder, delay or defraud" the City from collection of its claims. *See* WIS. STAT. § 242.04(1)(a) (2017-18).[2] The City noted that Choudry had spent over $420,000 to acquire the properties while simultaneously accruing over $1.3 million in debt.

¶10 Finally, the sixth cause of action was to pierce the corporate veil, on the ground that taking title to the properties in the limited liability companies listed above was for the purpose of evading legal duties and avoiding personal liability with regard to the properties. The City alleged that the companies do not have an identity separate from Mohammad Choudry, noting that there are no separate business checking accounts or separate accounting records for those entities, and further, that Mohammad Choudry has listed himself individually as the plaintiff in eviction actions involving the properties.

¶11 Based on these allegations, the City sought damages in an amount of almost $1.3 million, an order requiring Choudry to record all unrecorded deeds, and an injunction barring Choudry from acquiring any further interests in real property until all claims and judgments of the City were paid and satisfied. Moreover, the City requested that a receiver be appointed to manage the properties.

¶12 A temporary injunction was granted on November 3, 2016. Additionally, Seth E. Dizard was appointed the receiver for the properties. As the receiver, Dizard was given the authority to manage the properties: to collect all rents and pay expenses relating to the properties, including paying property taxes

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

5

that were due and owing, as well as to perform all necessary maintenance and repairs to bring the properties into code compliance.

¶13    Over the next several months, Dizard filed reports with the trial court regarding his actions as the receiver, and the court held several hearings and status conferences to discuss the progress being made by Dizard. At one such hearing in February 2017, the court reminded the parties that the "overall goal … is to make sure that these properties … are brought up to code, that they're a safe and healthy environment for the tenants that are going to reside in them," and that they are "made habitable." The court stated that another goal was to "address the taxes that are owed on these properties, because that's certainly important to the City and to the residents of the community." The court commended Choudry for his cooperation with the receiver and the progress made to that point, noting that Choudry had come to recognize the "seriousness" of the matter. The court also observed that "the reality of this is that this is going to be a very long process to reach ultimately what needs to be done here."

¶14    In April 2017, Choudry was given the opportunity to remediate the code violations on one of the properties. This was to be accomplished within a thirty-day time frame. However, at a hearing in July 2017, the trial court pointed out that Choudry had not used licensed contractors to perform the required repairs, and had not pulled permits for the work. At a subsequent hearing in August 2017, the remediation had just been completed—taking much longer than the thirty-day time frame that had been initially anticipated—which, according to the court, was due at least in part to "the way [Choudry] approached" performing the work.

¶15    Also at that August 2017 hearing, the City noted that there were upcoming substantial expenses for several properties—replacing roofs and

furnaces before winter—that would require the sale of several of the properties in order to obtain the money necessary to cover these expenses. Choudry stated that it preferred that the properties be mortgaged to cover the expenses instead of sold, but did not object to the receiver's motion. The trial court authorized the sale of the properties at a September 2017 hearing. At a status conference in December 2017,[3] Dizard reported that he was marketing the properties that he had been authorized to sell, and that the remaining properties being retained were "stable"— there were no outstanding violations with the City, and they were being managed "without significant issue."

¶16    In May 2018, Dizard filed a motion to authorize him as the receiver to transfer the properties into a trust. Dizard estimated that it would take "several more months to fully stabilize the [p]roperties, and fully abate the nuisance caused by [Choudry]," and further, that it would be "several years before the debts and liabilities caused by the nuisance, including the costs of this litigation, can be repaid." Therefore, Dizard asserted that the creation of a trust would allow for Dizard to continue the duties that he had been performing as the receiver "without the need for further court involvement."

¶17    Choudry retained new counsel and objected to the motion. Choudry argued that the underlying reason for Dizard's motion to transfer the properties to a trust was the City's desire to enjoin Choudry from "ever being in the real estate business again in the City of Milwaukee." Choudry further pointed out that throughout the proceedings, there had never been any litigation on the merits of

---

[3] Also at this conference, the trial court heard and granted a motion by Choudry's counsel to withdraw from the case due to Choudry's lack of payment of attorney's fees.

the City's allegations. Thus, Choudry asserted that transferring the properties into a trust would not resolve the dispute between Choudry and the City; it would merely release the receiver.

¶18 At the hearing on the motion on July 13, 2018, the trial court disagreed with Choudry. It stated that "the proof is in the pudding"—that the record reflected that the "allegations" of the City had been proven in the reports filed by Dizard as the receiver. The City noted that with the court's approval of the trust, it would move to dismiss the case subject to the operation of the trust, which would "accomplish[] what everybody's goals are"—paying off the taxes and other debt associated with the properties without requiring continuous court involvement. The court therefore granted the motion. The City then moved to dismiss the matter pursuant to the trust being authorized and active, which was also granted by the court. This appeal follows.

## DISCUSSION

¶19 Throughout these proceedings, in which there were numerous hearings and status conferences held on the record, the record demonstrates that the merits of the City's complaint were never litigated beyond the grant of the temporary injunction and appointment of Dizard as the receiver. In fact, as stated above, the City moved to dismiss its complaint upon the trial court's order authorizing the transfer of Choudry's properties into a trust.

¶20 We therefore focus our analysis on Choudry's argument that because there was no final judgment regarding the allegations in the complaint filed by the

City, the trial court had no legal authority to order a remedy.[4] "The issue of whether judicial authority exists" is a question of law that we review *de novo*. ***GMAC Mortg. Corp.of Penn. v. Gisvold***, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998).

¶21 Choudry asserts that neither the City nor Dizard provide any law supporting the premise that the trial court had the authority to authorize the creation of the trust. For example, in response to Choudry's objection to transferring the properties to a trust, Dizard cited WIS. STAT. § 813.16 in support of his statement that the trial court has broad discretion to fashion a remedy. That statute outlines the trial court's authority to appoint a receiver; it does not address the court's discretion to impose other remedies.

¶22 Dizard also cited ***Beloit Liquidating Trust v. Grade***, 2004 WI 39, ¶6, 270 Wis. 2d 356, 677 N.W.2d 298, in which a trust was created to liquidate the remaining assets of Beloit Corporation after its bankruptcy proceedings. In that case, at the time the trust was created, the bankruptcy court had already confirmed Beloit Corporation's reorganization plan. *See id.*, ¶5. Generally, under bankruptcy law, a confirmed plan has the same effect as a final judgment. *See* ***Adair v. Sherman***, 230 F.3d 890, 895 (7th Cir. 2000) ("The law is well settled that a confirmation order is res judicata as to all issues decided[.]" (citation omitted)); ***Wallis v. Justice Oaks II, Ltd.***, 898 F.2d 1544, 1550 (11th Cir. 1990) ("[A] bankruptcy court's order confirming a plan of reorganization is given the same

---

[4] Although Choudry raises several other issues in its appeal, based on our decision, we need not address them. *See* ***Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 (stating that appellate courts "should decide cases on the narrowest possible grounds," and that we need not address issues that are not dispositive).

9

effect as any district court's final judgment on the merits.").[5]  Thus, Dizard's reliance on **Beloit Liquidating** is misplaced due to the significant distinguishing factor that there is no final judgment on the merits in this case.

¶23    Instead, on appeal Dizard and the City focus their arguments on the trial court's equitable powers.  A trial court has the "authority to grant equitable relief, even in the absence of a statutory right."  **McFarland State Bank v. Sherry**, 2012 WI App 4, ¶32, 338 Wis. 2d 462, 809 N.W.2d 58 (citations omitted).  "Wisconsin has long held that a trial court vested with equitable powers may enjoin public or private nuisances."  **State v. Weller**, 109 Wis. 2d 665, 675, 327 N.W.2d 172 (Ct. App. 1982).  Furthermore, pursuant to WIS. STAT. § 701.0401(4), a trust may be created by a court "pursuant to its statutory or equitable powers."

¶24    However, while the trial court has the authority to grant equitable relief, that relief "must be in response to the invasion of legally protected rights."  **Breier v. E.C.**, 130 Wis. 2d 376, 389, 387 N.W.2d 72 (1986).  In other words, "[t]he exercise of equitable authority … may provide complete justice *only* where there is a wrong."  **Id.** (emphasis added).

¶25    Here, the "wrong" was never definitively determined by the trial court before it provided relief by ordering the creation of the trust.  Rather, a *temporary* injunction was granted, in which the court found that the City had "a *reasonable probability of success on the merits*" of its claims.  (Emphasis added.)

---

[5] This court also recognized the concept of a confirmed plan having the same effect as a final judgment in **Beloit Liquidating Trust v. Grade**, 2003 WI App 176, ¶16, 266 Wis. 2d 388, 669 N.W.2d 232, *rev'd by* **Beloit Liquidating Trust v. Grade**, 2004 WI 39, 270 Wis. 2d 356, 677 N.W.2d 298; however, because that case as decided by this court was overturned by our supreme court, it no longer has precedential value.  *See* **Blum v. 1st Auto & Cas. Ins. Co.**, 2010 WI 78, ¶42, 326 Wis. 2d 729, 786 N.W.2d 78.

This was followed by almost two years of proceedings in which the court monitored the progress of Dizard in his role as the receiver; however, those proceedings did not include litigation regarding the merits of the City's claims.

¶26 While Dizard's actions as receiver are related to some of the allegations set forth in the complaint—overseeing repairs to the properties to address the code violations pursuant to the public nuisance claim, and paying down the delinquent property taxes which relates to the cause of action seeking personal liability for delinquent taxes on properties owned by Choudry's assorted corporate entities—the trial court never made rulings to establish that Choudry had committed a "wrong" against the City. Therefore, we conclude that because a final judgment was never reached regarding the City's claims against Choudry, the trial court did not have the authority to order the relief requested—the transfer of Choudry's properties into a trust. *See id.* at 389.

¶27 Accordingly, we reverse the trial court's order dismissing the action after it authorized Choudry's properties to be transferred into a trust, and further, we remand this matter to be reopened, to continue the receivership, and to conduct further proceedings as appropriate, consistent with this decision.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.